EDWARD C. JACOBS, Trustee, *et al.*, Plaintiffs-Appellees, *v.* JAMES L. CARROLL, Defendant-Appellant.

Second District (1st Division)    No. 75-66

Opinion filed February 14, 1977.

Albert Friedman, of Chicago, for appellant.

Wayne B. Flanigan, of Wasneski, Yastrow, Kuseski & Flanigan, of Waukegan, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

On August 20, 1974, the plaintiffs, Edward C. Jacobs, as trustee, and Arnold W. Shunneson and his wife, filed their complaint to recover possession of resort property on Channel Lake, Illinois, sold to the defendant, James L. Carroll, under contract. No explanation has been made as to what interest Jacobs would have in the suit since he was not the trustee under the trust at the time suit was filed. Defendant filed a counterclaim for rescission and return of the money paid pursuant to said contract or articles of agreement. Plaintiffs filed an amended complaint adding the Chicago Title and Trust Company, as trustee under Trust No. 59715, the title holder of record, as a party plaintiff. The case was heard by the court without a jury and judgment for possession was entered for the plaintiffs on their complaint and against the counterplaintiff on his counterclaim. The defendant, Carroll, appeals. We shall hereinafter refer to defendant Carroll as purchaser and all other parties by their names.

From the testimony of Mr. Shunneson and the plaintiffs' other witnesses, and the undisputed evidence, the following facts appear. The property in question is a resort business called Channel Lake Boat House. Sometime in 1971 the Shunnesons and the purchaser began discussing the possible sale of the real estate and: (1) the sale of personal property valued by the parties at $55,000; (2) the transfer of a liquor license; (3) the transfer of an Evinrude franchise; and (4) a covenant by the Shunnesons not to engage directly or indirectly in the tavern and boat business for a period of five years within a radius of five miles from the premises. Thus, the real estate was but a part of the total contract. Both parties were represented by attorneys, Jacobs representing the Shunnesons and Katz representing the purchaser.

It would appear that on April 6, 1972, the purchaser and Katz met with the Shunnesons in Jacobs' office. The articles of agreement for warranty deed and the sale of the personal property were signed on that date, although the contract itself was dated April 1, 1972. The articles of agreement were prepared by Jacobs except for paragraph 35 which was added thereto by Katz. Paragraph 35 provides:

"After the execution of this Agreement Seller shall place the title to said real estate in an irrevocable land trust with the Chicago Title and Trust Company. The parties shall open an escrow with the Chicago Title Insurance Company through which this transaction shall be closed. Sellers shall deposit in said escrow an irrevocable direction to said land trustee to convey to Purchaser title to said real estate upon payment of the full purchase price. All trust fees and escrow money shall be paid by Purchaser."

In the contract the Shunnesons were listed as the sellers and Carroll or his nominee as the purchaser. In addition to the obligations assumed under paragraph 35 the Shunnesons agreed to convey the personal and real property to the purchaser upon the payment of $180,000, together with interest at 7% and to furnish an owner's title insurance policy by Chicago Title Insurance Company showing merchantable title.

At the time the negotiations commenced for the purchase of the property in 1971 the title to the premises was in Arnold W. Shunneson. Subsequently, on May 27, 1971, prior to the date of the articles of agreement herein, title to the premises had been conveyed by the Shunnesons to Edward C. Jacobs as trustee under Trust No. 52771. However, the contract of sale referred to a title commitment report dated August 4, 1971, which originally showed title in Arnold W. Shunneson. On April 19, 1972, Mr. Jacobs' office sent Mr. Katz a title commitment report of the Chicago Title Insurance Company dated August 4, 1971, updated to April 17, 1972, showing title to be in Jacobs as trustee. Katz admitted receiving this document.

On April 18, 1972, Mr. Jacobs, as trustee, at the oral but not written direction of Mr. Shunneson, conveyed the property to Chicago Title and Trust Company as trustee under the provisions of a new trust agreement. Basically the new trust agreement has the same terms as the previous trust document except that the Chicago Title and Trust Company, as trustee, was given the power of direction. The conveyance was recorded. Also, on April 18 an escrow agreement, pursuant to the requirements of paragraph 35 of the contract, was prepared by the Chicago Title and Trust Company and was mailed to both Katz and Jacobs at that time and again on September 14, 1972. It provided, *inter alia*, that the signed direction by both parties authorizing the escrow agent to direct the land trust to

convey the premises, would be deposited once the purchase price was paid in full. The escrow agreement was never signed by either party. Katz testified he put the escrow agreement in his file and did not act because the seller had not. Katz did pay the escrow fee.

The sales contract provided for a $25,000 down payment, a $10,000 payment in November 1972 and an annual payment of $15,000 every June thereafter until full payment was made. The down payment of $25,000 was not made at the time the contract was executed, the purchaser intending to withhold payment until receipt of a survey and the placing of the title with Chicago Title and Trust Company. However, according to Mr. Shunneson's testimony, purchaser took possession on April 15 and paid him the $25,000 around April 18 because Shunneson threatened not to perform his agreement to make certain improvements unless he was paid. The survey was delivered to the purchaser but there was no evidence as to when it was delivered. The next payment of $10,000 was made by the purchaser in November 1972. In June 1973 no payment was made on the principal but the purchaser with the seller's consent, paid the sum of $10,151 for interest due and owing. When the June 1974 payment was due and the same was not paid by the purchaser, the plaintiffs herein brought this action for possession of the property in question.

The amended complaint alleged the making of the contract of sale on or about April 1, 1972, the previous disclosure that title was actually in Jacobs as trustee, the subsequent conveyance to Chicago Title and Trust Company as trustee, and the default. In his answer and counterclaim the purchaser alleged that the contract was void, *ab initio*, that no disclosures had been made before the sale, that the Shunnesons had failed to perform paragraph 35 of the agreement, and denied that he had breached the agreement or that the notice of forfeiture was legal and served by the proper parties. The plaintiffs, in their reply, denied all of the purchaser's allegations and alleged that the contract was valid since full disclosure was made prior to the signing of the contract and alleged full performance of paragraph 35.

The purchaser has raised five issues. The first issue is whether the court erred in allowing parol evidence to show the Shunnesons did not have title to the property at the date of the execution of the articles of agreement for warranty deed. Secondly, the purchaser contends that the findings of the trial court—that disclosure was made of the status of the title prior to the execution of the articles of agreement and that the purchaser was aware at the time of the consummation of the purchase that he was dealing with Shunneson as beneficiary with power to direct conveyance of the property rather than Shunneson as titleholder of record—were in error. The third issue is whether the articles of agreement

for warranty deed were void or voidable. The fourth is whether there was an effective transfer of title from Jacobs as trustee to Chicago Title and Trust Company as trustee. The purchaser's fifth contention is that the contract was breached by the Shunnesons because the trust agreement with Chicago Title and Trust Company was not irrevocable and an escrow was not created pursuant to paragraph 35 of the contract.

The purchaser first contends that the contract was invalid and unenforceable since the Shunnesons signed the contract as owners when, in fact, they were only beneficiaries of a land trust. The plaintiffs respond that parol evidence is admissible to prove that the purchaser knew of the Shunnesons' true status and that, because he knew, the contract was valid.

In transactions involving property held by a land trust there is, as was pointed out by the court in *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 16, 260 N.E.2d 431, 434-35, a natural tendency to blend the power of the beneficiary with that of the trustee since the beneficiary is the person interested in the sale. It is the beneficiary who determines the price and the terms and he generally is the one who conducts the negotiations, but the nature of the land trust is such that, if the trust is to be preserved, the powers of the beneficiary and the trustee must be kept distinct. Accordingly, if a beneficiary of a land trust deals with the property as if no trust existed and contracts as owner to sell the property, the contract is void as being beyond the beneficiary's power to act.

On the other hand, as pointed out in *Madigan*:

"* * * it cannot be said that a beneficiary can never contract to sell the trust property. He may do so under appropriate circumstances, not because he has power to convey title or to execute a deed, or because he is the agent of the trustee or stands in its stead, but because the trust agreement gives him 'control of the selling' and the right to direct the trustee to convey title to whomever he designates. Since he has the power to designate conveyance he may contract to exercise that power. If the sales contract is one in which this power is explicitly exercised, or if it is one which, because of the disclosure of the trust and the beneficiary's status, can be construed as exercising this power, the contract is enforceable against both the beneficiary and the purchaser. To permit the beneficiary to contract in this manner does not encroach upon the jurisdiction of the trustee nor its function; it does not infringe upon the protection afforded a purchaser who deals with the trustee, nor does it expand the beneficiary's liability or change his status. His legal interest in the trust remains personal property; but allowing him to climax negotiations for the sale of the real estate by agreeing to have it conveyed removes some of the make-

believe which hovers over land trusts and permits a realistic approach to the disposition of trust property." (125 Ill. App. 2d 8, 16-17, 260 N.E.2d 431, 435.)

We agree with this reasoning of the court in *Madigan.* See also *House of Realty, Inc. v. Ziff* (1973), 9 Ill. App. 3d 419, 292 N.E.2d 71.

The issue before this court, therefore, is whether the Shunnesons contracted as beneficiaries to direct the trustee to convey title or whether they attempted to sell as owners, which they could not do.

■■ At first glance, the contract of sale seems to indicate that the Shunnesons sought to convey as owners rather than as beneficiaries. However, the facts are that the Shunnesons were not the owners, and more importantly, that the contract of sale specifically referred to the August 4, 1971, title report. The updated title report, reissued April 17, 1972, and mailed to the attorney for the purchaser on April 19, 1972, showed not the Shunnesons but Jacobs as trustee as owner, revealing that a latent ambiguity existed. Under these circumstances, the language describing the purported seller in the contract of sale should not be literally applied to the existing factual situation. (*Allendorf v. Daily* (1955), 6 Ill. 2d 577, 129 N.E.2d 673; *M & J Diesel Locomotive Filter Corp. v. Nettleton* (1965), 56 Ill. App. 2d 146, 205 N.E.2d 659.) A latent ambiguity existing, the rules of construction require that where the identity of the parties to the contract is not clear, that parol evidence of all of the facts and circumstances surrounding the making of the contract may be considered to determine who the actual parties are. *M & J Diesel Locomotive Filter Corp. v. Nettleton.*

The parties at the trial were in serious disagreement as to whether a disclosure as to the land trust had been made to the purchaser prior to the sale. Mr. Shunneson testified, over objection, that in the middle of March 1972 he and his attorney Jacobs met with the purchaser and his attorney, Katz, at Jacob's office and discussed the land trust. He stated that Katz wanted the Chicago Title and Trust Company as trustee, not Jacobs, so that in the event that Shunneson and Jacobs died the purchaser could get clear title from Chicago Title and Trust Company. Jacobs did not testify. Both the purchaser and his attorney Katz testified that no such meeting occurred, that the first meeting Katz had with Shunneson and his attorney was when the contract was signed. Katz did testify that he had several conversations with the Shunnesons' attorney prior to the closing. However, neither the purchaser nor Katz refuted Shunneson's testimony that disclosure was made.

■■ When the testimony in a bench trial is in conflict, it is the trial court's duty to decide the credibility of the witnesses. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Schulenburg v.*

*Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) The trial court apparently believed Shunneson, stating in its memorandum opinion:

> "There would seem to be no reason to have the old title letter showing title in Jacobs as Trustee in August of 1971 issued and sent to Attorney Katz purchaser's attorney, if there had been no discussion of status of title between the parties on or prior to the closing unless it was to confirm disclosure by sellers that Jacobs held title as Trustee and Arnold Shunneson, the seller, was the beneficiary."

There being sufficient evidence to support the finding of the trial court that the purchaser knew of the land trust at some time prior to or on April 1, 1972, and that the parties intended to act as beneficiary and purchaser and not as owner and purchaser, we will not substitute our judgment for that of the trial court. (*Kravis v. Smith Marine, Inc.*, and *Schulenburg v. Signatrol, Inc.*) That being so, the contract for the conveyance of the real estate was valid and the court properly denied the purchaser's counterclaim for rescission.

■■ The purchaser next contends that the articles of agreement for warranty deed are void or voidable. In support of this contention purchaser has cited *Schneider v. Pioneer Trust & Savings Bank* (1960), 26 Ill. App. 2d 463, 168 N.E.2d 808. In that case the beneficiary of a land trust, one Harmon, contracted to sell certain real estate to Schneider. The $2000 down payment was deposited with the Pioneer bank in escrow, title being in a land trust with the Pioneer bank as trustee and Harmon as the beneficiary. Harmon contended that he was the real owner of the property, with authority to sell and that he was at all times ready, willing and able to convey the real estate in question. Harmon withdrew the money from the escrow and Schneider, the purchaser, sued to recover his down payment. The court held that only the Pioneer bank as trustee was entitled to accept the offer and, as they had never done so, there was no valid contract and Harmon was ordered to return the down payment. That case is not in point as applied to the facts in the case before us. In support of his contention, purchaser has also cited *Madigan v. Buehr*, which we discussed above and do not find to be supportive of purchaser's contention in this regard. Lastly, in support of the argument that the contract is void or voidable, purchaser has incorrectly quoted sections 1 and 2 of "An Act in relation to certain contracts involving property held in land trusts" (Ill. Rev. Stat. 1969, ch. 29, pars. 8.31 and 8.32), which provide that *residential property* which is the subject of a land trust may not be sold under an installment contract unless the seller at the time of the execution of the contract makes a full disclosure of the name of the trustee, the designation of the trust and all of the beneficiaries of the trust

to the contract purchaser. Section 2 further requires that the contract be signed by the beneficiaries having the power of direction. The purchaser has asserted that this statute refers to "real estate" in his quotation thereof. As indicated above, the statute is limited to "residential property." Whether the property in question before us is residential property as far as the record discloses is perhaps questionable as the same is commercial but does include living quarters. In any event, we find that prior to the closing the statutory requirements of disclosure were met.

■■ Purchaser next contends that the transfer of the title to the real estate herein from Jacobs to Chicago Title and Trust Company was void. In support of this contention he has cited *Spengler v. Kuhn* (1904), 212 Ill. 186, 72 N.E. 214. He has also cited "An Act to provide for the appointment of successor trustees in land trust agreements" (Ill. Rev. Stat. 1975, ch. 148, par. 61). The latter statute is not applicable to the facts before us, as the same pertains to the appointment of a successor trustee in the event of the death, resignation or termination due to dissolution of a land trustee. In the case before us we have the appointment of a new trustee under a new trust agreement upon the direction of the beneficiary. In *Spengler* the testamentary trustee under the will entered into an agreement with the Security Title and Trust Company whereby she sought to transfer her authority as trustee to that company. The court held that this was improper and that if she were incapable of performing the duties as testamentary trustee, that application should be made to a court of equity for the appointment of a successor trustee. Herein we have a land trustee, recognized in Illinois as a proper party which may hold title to real estate. We then have a beneficiary under that land trust who directs the land trustee to transfer the title, not to a successor trustee as contemplated by the above-mentioned statute, but to a different or new trustee under a new trust. We do not find *Spengler* to be applicable herein.

■■ Purchaser also contends in this regard that the direction of the Shunnesons as beneficiaries to transfer the trust to the Chicago Title and Trust Company was void or voidable as it was not in writing. The transfer was, however, made at the oral direction of the beneficiary and it was recognized by Jacobs as the former trustee, and by the Chicago Title and Trust Company as the new trustee, as evidenced by the latter's preliminary title report showing title in the Chicago Title and Trust Company as trustee. We find no law in Illinois that states that the beneficiary may not direct the trustee orally to transfer title, nor do we find that this is a valid argument for seeking to avoid a contract where title is placed in the new trustee at the request of the purchaser and so recognized by both the beneficiary and the new trustee.

Lastly, purchaser contends that the sellers breached the contract

because the trust agreement with the Chicago Title and Trust Company was not irrevocable, that the escrow was not created by the sellers and that the sellers did not deposit an irrevocable power of direction in escrow with Chicago Title and Trust Company, all as required by paragraph 35 of the articles of agreement for warranty deed. We find that the purchaser has waived this contention, and agree with the finding of the trial court.

As we stated in *Dunn v. Hoefer* (1972), 5 Ill. App. 3d 793, 795, 284 N.E.2d 1, 3:

> "There is no question that a party to an express contract may waive certain of its provisions and that such waiver may be shown by parol evidence."

Likewise, in *Welsh v. Jakstas* (1948), 401 Ill. 288, 298, 82 NE.2d 53, 59, the Supreme Court stated:

> "Any party to a contract has a right to waive a strict compliance and rights arising under sealed instruments may be waived by parol. (Citation.) * * * The waiver of a covenant by the party for whose benefit it is inserted into a written instrument may be made by parol, and such waiver is held not to be a modification or change in the terms of the original agreement."

See also *Bartels v. Denler* (1975), 30 Ill. App. 3d 499, 501, 333 N.E.2d 640, 642; 12 Ill. L. & Prac. *Contracts* §§303, 408, 409 (1955).

■■ In the case before us, Katz, the attorney for the purchaser, admitted that he did receive the escrow agreement in April or May, 1972, that he paid the escrow fee, that he put it in his file and, as he stated, "* * * I don't think I ever did anything with the agreement. I had no instructions from my client with reference to what to do with the escrow agreement." Also, the escrow agreement was again mailed to him on September 14, 1972. No complaint was made as to the terms of the escrow by the purchaser. Thus, by inaction in 1972, the purchaser seeks to avoid the contract upon default in 1974. This he cannot do. We find that the purchaser herein has waived strict compliance with the provisions of paragraph 35 of the contract.

Having reviewed all of the purchaser's contentions and finding them to be without merit, we affirm the judgment of the trial court.

Affirmed.

SEIDENFELD, J., concurs.