JOHN RIZAKOS, Plaintiff-Appellant, *v.* JOHN KEKOS *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 77-54

Opinion filed December 20, 1977.

Moltz & Wexler, of Chicago (Leon C. Wexler, of counsel), for appellant.

Sherman & Lewis, of Chicago (Maurice L. Lewis, of counsel), for appellees.

Mr. JUSTICE PUSATERI delivered the opinion of the court:

Plaintiff, purchaser John Rizakos, brought this action for specific performance of a contract for the sale of real estate, naming as defendants, Chicago Title and Trust Company (hereinafter Trustee), not

individually but as trustee under a land trust, and John Kekos and Lampis Boudouvas as sole beneficiairies of said trust. Defendants Kekos and Boudouvas filed a motion to dismiss this action. The trial court granted the defendants' motion, found that the contract should not be specifically enforced and ordered that the complaint be stricken and the suit dismissed. From this order, the plaintiff appeals, contending that this contract for the sale of real estate should be specifically enforced.

The pertinent facts disclose that on February 9, 1976, plaintiff Rizakos as purchaser and defendants Kekos and Boudouvas as sellers entered into a written contract for the sale of real estate commonly referred to as 6339-41 North California Avenue, in Chicago. The contract stated that an office, store and restaurant were being operated on the premises. An additional provision in the contract which was initialed by the parties, read as follows: "restaurant seller (owner) has (option) to renew lease for 5 years at $425.00 per month." The signatures of defendants Kekos and Boudouvas appear respectively in the two printed "Seller" blanks at the bottom of the contract. At all times during this transaction, title to the property was vested in the defendant Trustee.

The trust declaration and agreement, which was set forth on the Trustee's printed commercial form, was executed on October 14, 1970, by the Trustee and defendants Kekos and Boudouvas. Plaintiff's sole contention on appeal is that the defendant beneficiaries Kekos and Boudouvas should be compelled to direct the Trustee to convey title to him. Plaintiff argues that to permit the defendant beneficiaries to escape their contractual obligations by their failure to disclose to him that the property was held in a land trust, at the time of the execution of the contract, would encourage, in our State, the use of land trusts for deceptive purposes.

At the outset, we note the principle articulated by this court in *Seaberg v. American National Bank & Trust Co.* (1st Dist. 1976), 35 Ill. App. 3d 1065, 1069-70, 342 N.E.2d 751, wherein we stated:

" The beneficiary of a conventional land trust, as used in Illinois, may under appropriate circumstances enter into a valid contract to convey title to the trust property. He may do so not as agent of the trustee but in his capacity of beneficiary. This right is limited to situations in which the trust agreement vests in him the sole right to direct the trustee to convey title. Such a contract will be mutually enforceable by the beneficiary as seller and the buyer where it expressly, or by reasonable construction, provides for the exercise by the beneficiary of the power to direct conveyance."

(See *Baird & Warner, Inc. v. Stuparits* (1st Dist. 1977), 53 Ill. App. 3d 338, 368 N.E.2d 748; *Jacobs v. Carroll* (2d Dist. 1977), 46 Ill. App. 3d 74, 360 N.E.2d 136.) An examination of the trust declaration and agreement

in the case at bar reveals that the beneficiaries had the right to direct the Trustee to convey title to the trust property. This document specifically provided in pertinent part that:

> "The beneficiary or beneficiaries hereunder, in his, her or their own right shall have the management of said property *and control of the selling,* renting and handling thereof, * * *. No beneficiary hereunder shall have any authority to contract for or in the name of the trustee or to bind the trustee personally. [further that,] * * * *the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property* and to manage and control said property * * *. * * * no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds * * *." (Emphasis added.)

■■ In addition, the real estate sales contract in the instant case provided that "The balance of the purchase price * * * will be paid * * * on delivery of stamped Warranty or *Trustee's Deed* * * *." (Emphasis added.) Moreover, under the terms of the contract, defendants Kekos and Boudouvas unequivocally accepted the plaintiff's offer in the following manner: "I/we accept this offer and agree to perform and convey title or *cause title to be conveyed* according to the terms of this agreement." (Emphasis added.) We conclude, that by this acceptance, defendants Kekos and Boudouvas became obligated " * * * to see to it that all matters were taken care of to effectuate a transfer of title to [Rizakos]." *House of Realty, Inc. v. Ziff* (1st Dist. 1973), 9 Ill. App. 3d 419, 422, 292 N.E.2d 71.

■■ Furthermore, the defendants in this cause may properly be said to be estopped from asserting their voluntarily nondisclosed status as beneficiaries as a defense to this action. Our supreme court has stated that in order to invoke this principle, the following elements must appear:

> "* * * (1) Words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged must have knowledge, either actual or implied, at the time the representations were made, that they were untrue; (3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him; (4) the party estopped must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel or by the public generally; (5) the representations or conduct must have been relied and acted on by the party claiming the benefit of

the estoppel; and (6) the party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party is permitted to deny the truth thereof." (*Lowenberg v. Booth* (1928), 330 Ill. 548, 555-56, 162 N.E. 191.)

A review of the record in the case at bar discloses that these above elements were present. The seller-defendants deliberately failed to disclose that they were beneficiaries and more importantly failed to advise the plaintiff that the subject property was in a land trust; they clearly had knowledge of their status as beneficiaries at the time the contract was executed, and intended and expected the plaintiff to rely on the inference of their nondisclosure, that they had title. In addition, there is no evidence indicating that the plaintiff knew that the subject property was in a land trust; he acted in reliance upon the defendants nondisclosure and assumed that they could convey title. To deny specific enforcement of this contract, would not only allow the defendant-sellers to prejudice the plaintiff by permitting them to deny their true status as beneficiaries, but would also allow the defendants to have a unilateral option whereby they could choose to enforce or escape their obligation under this contract at their whim. See *Ellis Realty v. Chapelski* (1st Dist. 1975), 28 Ill. App. 3d 1008, 1012, 329 N.E.2d 370, where the court stated, "* * * Defendant's failure to inform the plaintiffs that he was a beneficial instead of a legal owner or that his wife was also a beneficial owner should not work to the advantage of the defendant * * *."

We also do not find that the plaintiff had an affirmative obligation or that it would have been convenient for him to search title prior to his signing of the contract. This additional effort was neither a provision in the contract nor a typical occurrence in real estate transactions "* * * Although reasonable diligence is required of all persons in making such [real estate sales] contracts, it is not enough to prevent equitable relief that the buyer might have discovered the truth had he done all within his power. * * *" *Handelman v. Arquilla* (1950), 407 Ill. 552, 560, 95 N.E.2d 910.

■■ The defendant beneficiaries also argue that they had no authority to act on behalf of the defendant Trustee, citing *Schneider v. Pioneer Trust & Savings Bank* (1st Dist. 1960), 26 Ill. App. 2d 463, 168 N.E.2d 808, in support of this contention. We find this case to be inapposite. The court in *Schneider* merely found that under the circumstances in that case, it was the trustee and not the beneficiary of a land trust who could properly accept an offer to purchase trust property. We may not permit the defendant beneficiaries in the case at bar to assert that they contracted as owners of the property or as agents without authority; to do so would render the contract null and void. (*Seaberg v. American National Bank &*

*Trust Co.; Feinberg v. Great Atlantic & Pacific Tea Co.* (1st Dist. 1970), 131 Ill. App. 3d 1087, 266 N.E.2d 401, *appeal denied*, 45 Ill. 2d 591; *Madigan v. Buehr* (1st Dist. 1970), 125 Ill. App. 2d 8, 260 N.E.2d 431.) Such a result would be manifestly unjust under the facts in this case.

■■ We conclude that the beneficiaries in the case at bar entered into a valid and enforceable contract to convey the trust property. As our supreme court in *In re Estate of Frayser* (1948), 401 Ill. 364, 371-72, 82 N.E.2d 633, stated:

"\* \* \* The objects of courts of equity, as well as courts of law, is the enforcement of contracts rather than their evasion, and where a valid contract exists for a sale of land a court of equity will enforce it as a matter of right where it was fairly and understandingly entered into and no circumstances of oppression and fraud appear. [Citation.]"

(See *Lannon v. Lamps* (3d Dist. 1977), 53 Ill. App. 3d 145, 368 N.E.2d 196; *Yonan v. Oak Park Federal Savings & Loan Association* (1st Dist. 1975), 27 Ill. App. 3d 967, 975, 326 N.E.2d 773.) In the case at bar, no circumstances of oppression or fraud could in any way be attributed to the plaintiff.

For the aforementioned reasons, the order of the circuit court of Cook County striking the complaint and dismissing the suit is reversed. The cause is remanded to the trial court with directions to allow the defendants to answer or otherwise plead.

Reversed and remanded.

DOWNING, P. J., and STAMOS, J., concur.