FIRST NATIONAL BANK OF BARRINGTON, TRUST NO. 11-1317, *et al.*, Plaintiffs-Appellants, *v.* WILLIAM OLDENBURG *et al.*, Defendants-Appellees.

Second District    No. 81-172

Opinion filed October 27, 1981.

Alfred L. O'Connor, of Waukegan, for appellants.

No brief filed for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

The plaintiffs-sellers, Louis and Laura Langpop, appeal from an order of the Circuit Court of Lake County which granted the motion for summary judgment of the defendants-purchasers, William Oldenburg and Marlene Oldenburg, and denied their own motion for summary judgment to enforce the liquidated damages clause of a real estate sale contract and to recover, as liquidated damages, earnest money in the sum of $13,450.[1] We reverse.

The record in this cause reveals that title to certain real estate, designated as Unit T-222, 470 Old Barn Road, Lake Barrington Shores, Barrington, Illinois, was held by the First National Bank of Barrington, as trustee under a land trust dated July 10, 1977, and identified as Trust No. 11-1317. Under this agreement, the Langpops and Linda Maas were listed as beneficiaries and, as such, were entitled to receive the proceeds from the sale of the real estate. The Langpops, in particular, were given the power to direct the trustee in the management and control of the property and to direct the trustee to make deeds, mortgages, or trust deeds for the sale of the property or otherwise to deal with the title to the realty. In addition, the land trust agreement granted the beneficiaries control of the selling of the trust *res*.

Apparently, in the spring of 1979, the plaintiffs decided to dispose of the real estate held in trust and listed with J. S. James and Company, Inc. (James), a Barrington real estate broker. On May 22, 1979, Louis Langpop appointed Byron Cohen as his attorney for the purpose of executing a real estate contract for the property. Attorney Cohen, in an affidavit appended as part of the plaintiffs' motion for summary judgment, stated that he acted as the agent of the Langpops throughout the course of the real estate transaction. On June 2, 1979, the defendants, as purchasers executed a real estate sale contract, which identified the seller as "Trust 11-1317 First National [Bank] of Barrington," by which they agreed to purchase the property held in trust. The following words appear in the spaces provided for the signature of the seller: "Trust No. 11-1317 First National Bank of Barrington, Byron N. Cohen, agent for L. G. Langpop, beneficiary." Cohen also indicated in his affidavit that he accepted the

---

[1] The complaint in this cause as well as subsequent pleadings and documents of record, indicate that the original plaintiff in this action was "First National Bank of Barrington, Trust No. 11-1317." On November 21, 1980, the appearance of the First National Bank of Barrington as trustee was entered. On December 11, 1980, a motion was filed to amend the complaint and all other pleadings to substitute the Langpops as plaintiffs in lieu of First National Bank of Barrington, Trust No. 11-1317. The court granted the motion that same day. It appears the court agreed that the Langpops were the real parties in interest in the lawsuit and in the contract and that, since the real estate involved in the contract was no longer held in trust because it had been sold to another purchaser, the caption in the pleadings should be amended to reflect this situation. Accordingly, the Langpops will be referred to as the plaintiffs.

contract on behalf of Mr. Langpop. The sale price was $134,500, and the contract stated that the defendants had deposited $1,000 as earnest money, which was held in escrow by James, and would pay, within 18 days, the additional sum of $12,450 as earnest money for a total of $13,450. Paragraph five of the "Conditions and Stipulations" of the contract of sale specified that, upon termination of the contract by the fault of the purchasers, then at the option of the seller and upon notice to the purchasers, the earnest money shall be forfeited and retained by the seller as liquidated damages. In addition, the seller agreed "to convey or cause to be conveyed" to the purchasers or their nominees "a recordable trustees deed" to the property.

On June 23, 1979, the defendants addressed a letter to James informing it that due to circumstances beyond their control, namely that they were being transferred out of the area, they must cancel the real estate contract in question. They requested that the real estate company contact attorney Cohen for the release of their $1,000 money deposit. Later that same day, attorney Cohen, upon being informed of the intended cancellation, wrote to the defendants pointing out to them that they had not tendered the additional $12,450 in earnest money by June 20, as required by the contract, and also informed them that the seller, Trust No. 11-1317, First National Bank of Barrington, declared them to be in default of the contract. Shortly thereafter, on July 2, 1979, Cohen informed the defendants that demand was being made upon them and the James Realty Co. for the payment of the $1,000 held in escrow and for the balance of $12,450 earnest money still due under the contract. Approximately two weeks later on July 17, the defendants wrote to Cohen and offered to pay the $1,000 earnest money deposit held in escrow as a total settlement and release of the defendants' liability under the contract. On October 30, 1979, Cohen wrote to the defendants, on behalf of his client "the beneficiary of Trust No. 11-1317," and accepted their settlement offer of $1,000. This letter of settlement requested that the defendants sign and return to Cohen a letter of direction, which was enclosed as part of the settlement letter, authorizing or directing James to pay the $1,000 earnest money deposit to the order of Louis Langpop, "the beneficiary of the above trust." On November 15, 1979, Mrs. Oldenburg wrote directly to Mr. Langpop, in which communication she stated that "she had several telephone conversations with your attorney, Byron Cohen, concerning our mutual real estate contract." She stated that, in light of the fact that the plaintiffs had sold the property in question to another purchaser at a higher price and at an earlier closing date than provided under the original contract of sale with the Oldenburgs, the defendants felt that a 50-50 split of the $1,000 deposit was fair and just.

Subsequently, on November 19, 1979, attorney Cohen filed the

present action on behalf of "First National Bank of Barrington, Trust No. 11-1317," to recover payment of the full amount of earnest money pursuant to the liquidated damages clause of the real estate contract. After this action was commenced, defendants sent Cohen by certified mail in an envelope postmarked December 6, 1979, an executed letter of direction to James, dated October 30, 1979, which Cohen had previously sent to defendants. Mrs. Oldenburg's discovery deposition indicates that the defendants executed the letter of direction sometime after she had signed the letter of November 15, in which the defendant offered to settle the matter for $500.

On appeal, plaintiffs contend that the trial court erred in entering summary judgment against them and in favor of the defendants, because the court below incorrectly concluded that there was no valid contract between the parties. They also maintain on review they are entitled to judgment against the defendants in the sum of $13,450, the total amount of the earnest money agreed to in the contract plus interest and costs. They request this court enter judgment in favor of the plaintiffs in accordance with their prayer for relief.

■■ Although the defendants have not filed a brief on appeal, this court may nonetheless consider the plaintiffs' contentions on the merits. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493; *Super v. Armstrong* (1980), 83 Ill. App. 3d 1062, 1063-64, 404 N.E.2d 1008.

Plaintiffs first assert on appeal that the trial court erred in determining that they could not enforce the real estate contract in question against the defendants. In its memorandum of opinion the trial court concluded that the contract at issue was invalid and unenforceable. The court based its conclusion on the holding in *Schneider v. Pioneer Trust and Savings Bank* (1960), 26 Ill. App. 2d 463, 168 N.E.2d 808, which it felt controlled the present case. The trial court was reluctant to follow *Schneider*, but stated that it felt bound to do so because it is not "the prerogative of a trial court to lay *Schneider* to rest." In determining that the contract in the present case was unenforceable, the trial court reasoned that if, under *Schneider*, a beneficiary of a land trust cannot accept an offer made to a trustee, then it would appear that, in the present case, an agent of a beneficiary cannot accept an offer made to a trust, that is, Trust 11-1317, First National Bank of Barrington. We conclude that *Schneider* does not control the facts at hand and the trial court's conclusion that the real estate contract in question is invalid is erroneous.

■■ Before addressing *Schneider* and its effect, if any, on the present case, we first describe briefly the basic nature and substance of an Illinois land trust agreement and the powers accorded a beneficiary of such trust. By statute (Ill. Rev. Stat. 1979, ch. 29, par. 8.31), a land trust agreement vests

title, both legal and equitable, to the real property in the trustee while the interest of the beneficiary of the trust is personal property. Thus, the trustee is absolute owner of the real estate. (*In re Estate of McGaughey* (1978), 60 Ill. App. 3d 150, 153, 376 N.E.2d 259, 262.) Furthermore, as the trust agreement in the present case reflects, the beneficiary has the exclusive power to direct or control the trustee in dealing with the title and has the exclusive control, *inter alia*, of the selling of the trust property. (Ill. Rev. Stat. 1979, ch. 29, par. 8.31; *Dorman v. Central National Bank* (1981), 97 Ill. App. 3d 429, 432, 422 N.E.2d 1019, 1021.) Although it has been stated that the beneficiary of a land trust can neither contract to sell real estate nor accept an offer to purchase it (*Marshall Savings & Loan Association v. Chicago National Bank* (1965), 56 Ill. App. 2d 372, 379, 206 N.E.2d 117, 120; see *In re Application of County Treasurer* (1969), 113 Ill. App. 2d 50, 53, 251 N.E.2d 757), it has also been observed that this broad declaration of the law does not find support in the cases cited as authority for the proposition (*Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 12, 260 N.E.2d 431, 433). More narrowly, it has been held (1) that a beneficiary cannot accept an offer of sale and enter into a valid and enforceable contract of sale where the offer is made solely to the land trustee (*Schneider v. Pioneer Trust & Savings Bank* (1960), 26 Ill. App. 2d 463, 466, 168 N.E.2d 808, 809), and (2) that if a beneficiary of a land trust deals with the property as if no trust existed and contracts as owner of the property, the contract is void as exceeding the beneficiary's power to act. (*Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, 79, 360 N.E.2d 136, 139; *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 16, 260 N.E.2d 431, 434.) Nevertheless, as will be discussed in some detail subsequently, a beneficiary of a conventional land trust may enter into a valid contract to convey title to the trust property, when acting in his capacity as beneficiary, if the trust agreement vests in him the sole right to direct the trustee to convey title. *Kurek v. State Oil Co.* (1981), 98 Ill. App. 3d 6, 9, 424 N.E.2d 56, 59; *Page v. Fosco* (1980), 90 Ill. App. 3d 1113, 1115-16, 414 N.E.2d 89, 90; *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, 405, 371 N.E.2d 896, 897; *Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, 79, 360 N.E.2d 136, 141; *Seaberg v. American National Bank & Trust Co.* (1976), 35 Ill. App. 3d 1065, 1069-70, 342 N.E.2d 751, 754; *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 16-17, 260 N.E.2d 431, 435; see *Lampinen v. Hicks* (1979), 73 Ill. App. 3d 376, 377-79, 391 N.E.2d 1105, 1107-08.

In *Schneider v. Pioneer Trust & Savings Bank* (1960), 26 Ill. App. 2d 463, 168 N.E.2d 808, Harmon, the beneficiary of a land trust, contracted to sell to the Schneiders certain land which formed the trust *res*; the trustee, Pioneer Bank, held title to the real estate. The Schneiders addressed their offer to purchase the property to the bank and deposited in escrow at the bank $2,000 earnest money. Harmon, contending that he

was the real owner of the property with the authority to sell, never informed the trustee of the offer and attempted to accept it himself. Harmon withdrew the money from the escrow account, and the purchaser sued to recover the down payment. Resting its decision on basic contract principles, the court held that only the bank as trustee was entitled to accept the offer, and since it had not done so, there was no valid contract. The court stated that Harmon attempted to accept the offer addressed to the bank as trustee, which he could not do given the fact that an acceptance must conform exactly to the offer. 26 Ill. App. 2d 463, 465-66, 168 N.E.2d 808, 808-09.

On appeal plaintiffs attempt to distinguish *Schneider* on the ground that, unlike that case the contract in the present case does not list the trustee as the offeree-seller but rather identifies the offeree as Trust 11-1317, First National Bank of Barrington. While this argument may have surface appeal, we are not persuaded. *Schneider* was grounded on the rationale that the entity to whom the offer was made was not the same as the person who attempted to accept the contract as seller. Similarly, here the offeree, Trust 11-1317, is different from Byron Cohen, who signed the contract in the space provided for the signature of the seller with the notation "agent for L. G. Langpop, beneficiary."

Although plaintiffs fail in their attempt to distinguish *Schneider*, nonetheless *Schneider* does not govern the facts of the present case. The record in this case clearly supports the conclusion that the purchasers were dealing throughout the real estate transaction with the attorney representing the beneficiaries; that purchasers attempted to enter into a contract with the beneficiaries; and that they did not deal with, attempt to enter into a contract with, or actually enter into a contract with the Bank, as trustee, for the purchase of the trust property. While the trustee bank is identified as the seller in the contract, it is apparent that it was not the real offeree nor a party to the agreement.

Louis Langpop gave Byron Cohen the power of attorney to execute the real estate contract for the subject property; Cohen executed the contract on behalf of Mr. Langpop and acted as the agent of the Langpops throughout the course of the real estate transaction, including communicating and negotiating with the defendants regarding the cancellation of the contract and the controversy about the amount of earnest money which the plaintiff Langpops were entitled to keep. The letter, which Cohen wrote to the defendants on October 30, 1979, states that he is acting on behalf of his client, the beneficiary of the trust. The accompanying letter of direction identified Louis Langpop as the beneficiary of the land trust agreement. Furthermore, Mrs. Oldenburg, one of the defendants, wrote directly to Mr. Langpop and communicated that she had several telephone conversations with his attorney, Byron Cohen,

concerning their mutual real estate contract. The trial court's implicit determination that the beneficiaries were not the offerees is against the manifest weight of the evidence since the contrary conclusion is clearly evident (*Telander v. Posejpal* (1981), 94 Ill. App. 3d 616, 621, 418 N.E.2d 444, 449-50). The mere listing in the contract of the trust, or trustee, as the offeree does not preclude this court from recognizing, based on the conduct and dealings of the parties prior to and subsequent to the formation of the contract, that the beneficiaries were the actual offerees. Thus, in contradistinction to *Schneider*, the purchasers in the present case offered to enter into a contract with the beneficiaries as sellers, rather than the trustee, and the offer was accepted by the agent of one of the beneficiaries. Therefore, *Schneider* is inapposite.

■■ The contract between the parties was valid and enforceable. In *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 16-17, 260 N.E.2d 431, 435, the court determined that a beneficiary of a land trust could not enforce a contract and recover damages for the buyers' breach of contract where the contract of sale did not disclose either that the property was held in trust or that she was the beneficiary, because she had contracted as the owner of the property which was beyond her power as beneficiary. While the holding in *Madigan* is inapposite on the facts in the present case because (1) the contract at issue here discloses the property was held in trust as is evidenced by the statement that the seller agreed to "cause to be conveyed" to the purchasers "a recordable *trustee's* deed" (emphasis added) and (2) Mr. Langpop was listed as beneficiary after the signature of attorney Cohen as agent, the case is nevertheless important due to the following remarks, in the form of *dicta*, which the court made on that occasion:

> "* * * it cannot be said that a beneficiary can never contract to sell the trust property. He may do so under appropriate circumstances, not because he has power to convey title or to execute a deed, or because he is the agent of the trustee or stands in its stead, but because the trust agreement gives him 'control of the selling' and the right to direct the trustee to convey title to whomever he designates. Since he has the power to designate conveyance he may contract to exercise that power. If the sales contract is one in which this power is explicitly exercised, or if it is one which, because of the disclosure of the trust and the beneficiary's status, can be construed as exercising this power, the contract is enforceable against both the beneficiary and the purchaser. To permit the beneficiary to contract in this manner does not encroach upon the jurisdiction of the trustee nor its functions; it does not infringe upon the protection afforded a purchaser who deals with the trustee, nor does it expand the beneficiary's liability or change his status. His

legal interest in the trust remains personal property; but allowing him to climax negotiations for the sale of the real estate by agreeing to have it conveyed removes some of the make-believe which hovers over land trusts and permits a realistic approach to the disposition of trust property." (*Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 16-17, 260 N.E.2d 431, 435.)

This statement of the law has been cited approvingly and relied upon in subsequent decisions: *Lampinen v. Hicks* (1979), 73 Ill. App. 3d 376, 378, 391 N.E.2d 1105, 1107; *Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, 79-80, 360 N.E.2d 136, 139; *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, 405, 371 N.E.2d 896, 897; see *Page v. Fosco* (1980), 90 Ill. App. 3d 1113, 1114-15, 414 N.E.2d 89, 89-90; *Seaberg v. American National Bank and Trust Co.* (1976), 35 Ill. App. 3d 1065, 1069-70, 342 N.E.2d 751, 754; *House of Realty, Inc. v. Ziff* (1972), 9 Ill. App. 3d 419, 421-22, 292 N.E.2d 71, 73-74.

In particular the result reached in *Lampinen v. Hicks* controls the case at bar. In *Lampinen* the purchasers entered into a contract of sale with Lampinen, the sole beneficiary of a land trust. The purchasers directed their offer to Lampinen personally, and he accepted the offer as seller. As here, the contract in *Lampinen* provided that the seller agreed to cause title to be conveyed and that he would provide an appropriate deed if the property was in trust. Furthermore, as in the present case, the land trust agreement there stated that the beneficiary shall have control of the selling of the trust property. Relying on the language in the above instruments and the court's statements in *Madigan*, this court in *Lampinen* concluded that a valid and binding contract existed between the beneficiary, as seller, and the purchasers. In upholding the contract, the court reasoned that Lampinen, the beneficiary-seller was explicitly exercising his power under the trust agreement. The *Lampinen* court was satisfied that the beneficiary had not asserted he was the owner or title holder but agreed only to cause the property to be conveyed and to provide an appropriate trustee's deed. (73 Ill. App. 3d 376, 378-79, 391 N.E.2d 1105, 1107.) The facts of the present case are similar to those presented to the court in *Lampinen*. The same conclusions and result reached there should obtain in the case at bar.

Additional support for the conclusion that the beneficiaries in the present case may enforce the contract against the defendants as purchasers is found in *Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, 80-81, 360 N.E.2d 136, 140, and *House of Realty, Inc. v. Ziff* (1972), 9 Ill. App. 3d 419, 421-22, 292 N.E.2d 71, 73-74, cases in which the court has determined that the beneficiary of a land trust, as seller, could enforce a contract against the purchaser. This court in *Jacobs* based its decision on the fact that the purchaser knew of the land trust prior to or on the date the contract was executed and the seller was acting as beneficiary and not as

owner. In *Ziff*, the court held that the seller-beneficiary could enforce the contract because she had styled herself as beneficiary in the contract, thereby demonstrating to all concerned that she was not dealing with the property as the legal title holder, and, more importantly, because she had contracted expressly to "cause title to be conveyed," thereby obligating herself to effect a transfer of title.

In *Page v. Fosco* (1980), 90 Ill. App. 3d 1113, 1115-16, 414 N.E.2d 89, 90, and in *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, 405-06, 371 N.E.2d 896, 897, the court held that the purchasers could enforce a contract of sale against the sellers, who were beneficiaries under a land trust agreement, in factual settings similar to that presented to the court in this case. While those cases determined that purchasers, as opposed to sellers in the case at bar, could enforce a contract involving the sale of property held in a land trust, they nevertheless are a persuasive authority in support of the conclusion that the parties in the present case entered into a valid and binding contract which the sellers should be able to enforce against the buyers.

Based on the above analysis and the cases adjudicating the enforceability of contracts of sale between purchasers and sellers who are also beneficiaries under a land trust agreement, we conclude that the trial court erroneously determined that the present contract was invalid and hence unenforceable by plaintiffs-sellers.

The beneficiaries also contend that they are entitled to payment, as liquidated damages, of the full amount of the earnest money ($13,450) set forth in the contract. In effect they ask this court to enter summary judgment in their favor and against the defendants in the amount of the earnest money plus interest and costs. In denying the beneficiaries' motion for summary judgment on the basis that no valid contract existed, the trial court expressly declined to rule on these issues.

■■■ As previously stated the defendants admitted that they unilaterally canceled the contract. The contract provided in pertinent part that it should become null and void, thereby relieving the purchasers of liability, if either of two conditions occur: (1) the buyers were unable to procure a commitment for a loan within 28 days; and (2) the sellers were unable to secure a release or waiver of any option of first refusal or other preemptive rights created by the declaration of condominium. The reason which the defendants gave the plaintiffs for cancelling the contract, transfer out of the area, does not fall within the ambit of those conditions releasing the purchasers from liability. Thus it is apparent that the defendants unlawfully canceled the contract, and therefore the liquidated damages clause should be given effect. We conclude that a remandment on the issue of damages is unnecessary (see *Able & Associates, Inc. v. Orchard Hill Farms of Illinois, Inc.* (1979), 77 Ill. App. 3d 375, 383, 395

N.E.2d 1138, 1142-43), and this court enters summary judgment in favor of the plaintiff for $13,450 together with interest at 9 percent per annum from the date of the breach being June 23, 1979, and costs of suit and appeal. It is axiomatic that where, as here, the buyers default on a contract, the sellers may retain the full amount of the earnest money without reference to the amount of actual damages which the sellers may have suffered as a result of the purchasers' default. (*Wilfong v. W. A. Schickedanz Agency, Inc.* (1980), 85 Ill. App. 3d 333, 340, 406 N.E.2d 828, 833; *Bamberg v. Griffin* (1979), 76 Ill. App. 3d 138, 144, 394 N.E.2d 910, 914-15; *Curtin v. Ogborn* (1979), 75 Ill. App. 3d 549, 555, 394 N.E.2d 593, 598-99; *Pruett v. La Salceda, Inc.* (1977), 45 Ill. App. 3d 243, 247, 359 N.E.2d 776, 779; *Linster v. Regan* (1969), 108 Ill. App. 2d 459, 463, 248 N.E.2d 751, 753.) The record discloses that while settlement negotiations occurred including offers and counteroffers no settlement was achieved. Accordingly, the judgment of the Circuit Court of Lake County is reversed and summary judgment is entered for the plaintiff and against the defendant in the amount of the earnest money contracted for being $13,450, together with interest at the rate of 9 percent per annum from the date of the original breach of the contract, June 23, 1979, and costs of suit and appeal. Execution thereon shall issue forthwith.

Reversed.

SEIDENFELD, P. J., and HOPF, J., concur.