JEROME SWERDLOW *et al.*, Plaintiffs-Appellees, v. PAUL MALLIN *et al.*,
Defendants-Appellants.

Second District   No. 2—84—0228

Opinion filed March 26, 1985.

Philip S. Wolin, of Wolin & Rosen, and Jeffrey Schulman, both of Chicago, for appellants.

Stuart Smith, of Gordon & Glickson, of Chicago, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiffs, Jerome and Roberta Swerdlow, brought this claim for damages for breach of the real estate contract for the sale of their home. Defendants, Paul and Gila Mallin, counterclaimed, and the parties filed cross-motions for summary judgment. The circuit court of Lake County determined that there was no genuine issue as to any material facts and entered judgment in favor of the plaintiffs and against the defendants in the amount of $73,750, under the earnest money provisions of the contract. Defendant's motion to reconsider was denied.

On appeal, the defendants contend in their first issue that the trial court erred in granting summary judgment for plaintiffs because plaintiffs failed to comply with the requirement in the rider that the contract and rider be executed by the land trustee who held title. Thus, defendants urge that the contract was unenforceable.

Plaintiffs placed their home on the market in April or May of 1981. On September 14, 1981, defendants signed a contract to purchase for the sum of $737,500 and plaintiffs accepted. The following day the parties signed a rider to that contract. The rider required defendants to deposit an irrevocable negotiable letter of credit in the amount of $72,750, as earnest money, in addition to the $1,000 required by the initial contract. The defendants never provided a letter of credit, but did execute a promissory note in that amount. This note was signed 10 days after the rider and provided for 15% interest per annum. According to the plaintiffs' deposition, the parties agreed that

this note would be replaced by the defendants' letter of credit. After the promissory note was signed, the parties continued to try to complete the transaction, but no progress was made. On November 18, 1981, plaintiffs advised defendants that they would hold the note until November 30, 1981, and if no letter of credit or cash was substituted by that time then the contract could be forfeited. The defendants were apparently unable to obtain a letter of credit or other financing, and they requested more time.

Plaintiffs filed suit on April 2, 1982. Count I of plaintiff's complaint alleged that defendants failed to supply the letter of credit or redeem the $72,750 note by paying that amount as the earnest money deposit, and that plaintiffs were ready, willing and able to perform the contract, but the defendants had refused to honor the contract, and that the plaintiffs were damaged in the sum of $72,750. Count II alleged that the note became due on demand, and defendants had failed to redeem it. Judgment was sought in the amount of the note plus costs. The defendants filed a two-count counterclaim based on the same transaction which led to the plaintiffs' complaint.

As indicated, the parties filed cross-motions for summary judgment. After arguments, the trial court found for plaintiffs and against defendants in the amount of $72,750. Defendants filed a timely notice of appeal. We affirm.

■ On appeal, the first issue raised by defendants is based on the fact that plaintiffs failed to have the land trustee execute the agreements as required by paragraph 9 of the rider, which was executed on September 15, 1981, and provided:

"9. Seller agrees to have this Contract and Rider executed by the land trustee holding legal title to the premises within seven (7) days from the execution thereof by the other parties."

Defendants contend that the contract was not enforceable without this execution, and that the trial court erred in finding that defendants had waived this condition of the contract.

Defendants contend that, because plaintiffs failed to obtain the signatures of all the sellers required under the offer, no contract was created. In support of this contention, they cite cases which hold that the signature of one or two or more co-owners is not sufficient to create an enforceable contract. (*Dineff v. Wernecke* (1963), 27 Ill. 2d 476, 190 N.E.2d 308; *Madia v. Collins* (1951), 408 Ill. 358, 97 N.E.2d 313; *Hosty v. Kroupa* (1969), 117 Ill. App. 2d 419, 254 N.E.2d 613.) Contrary to defendants' assertion, the instant case does not involve one or more co-sellers. Instead, the contract was signed by the beneficiaries of the land trust rather than the trustee. Cases involving co-own-

ers are inapposite. However, paragraph 9 of the contract specifically required the trustee's execution, and this never occurred. The trial court found that while beneficiaries may not deal with trust property as if no trust existed, they may enter into a contract to convey title to the trust property if the trust agreement vests in them the sole right to direct the trustee to convey title. The trust agreement which was part of the record below provided that plaintiffs are beneficiaries and they alone have power of direction. At first blush it appears that the trust agreement is extrinsic to the contract presented on review. However, because there has been no objection to the consideration of that agreement, it can be considered as evidence. *Tolbird v. Howard* (1969), 43 Ill. 2d 357, 362, 253 N.E.2d 444.

■ The trial court ruled that the plaintiffs had power of direction under the trust and were acting within their authority as beneficiaries when they entered into the contract. Thus, it held, the contract was valid and enforceable. In support of this conclusion, the trial court relied on *First National Bank v. Oldenburg* (1981), 101 Ill. App. 3d 283, 287, 427 N.E.2d 1312, which held that a beneficiary of a land trust can enter into a contract to convey title to trust property if the trust agreement vests in him the sole right to direct the trustee to convey title. In *Oldenburg* the trustee was listed as the seller. By contrast, in the case at bar the plaintiffs-beneficiaries were listed as the sellers. However, the depositions of the parties and the language of the rider reveal that the defendants knew the property was held in a land trust and that the plaintiffs were the beneficiaries. Because of this, the fact that plaintiffs were listed as sellers does not make *Oldenburg* less controlling. On the basis of *Oldenburg* and the authority cited therein (101 Ill. App. 3d 283, 290, 427 N.E.2d 1312), the trial court could properly find that a valid and enforceable contract was created by the parties.

■ Defendants next contend that the trial court erred in finding that defendants had waived the requirement that plaintiffs have the land trustee execute the contract and rider. The trial court found that the failure to comply with the seven-day time provision was not a material breach, because the provision could have been complied with once the defendants obtained the letter of credit.

However, even more important is the fact that defendants did not raise this as an issue until after they advised plaintiffs they were unable to get the letter of credit. Thus, because obtaining the letter of credit was a material condition of the contract, the plaintiffs were entitled to view defendants' conduct as an anticipatory breach. (*Stonecipher v. Pillatsch* (1975), 30 Ill. App. 3d 140, 332 N.E.2d 151.) Once

defendants advised plaintiffs of their financial plight, and did so apparently without mentioning the said paragraph 9, the plaintiffs would have no reason to have the trustee execute the contracts. To further comply with the contract requirements would be a useless act, and the law does not require the doing of a useless act. *Haas v. Cravatta* (1979), 71 Ill. App. 3d 325, 389 N.E.2d 226.

This argument, together with the fact that defendants did not raise the issue of paragraph 9 compliance until after they found they could not get financing, supports the trial court's determination that defendants waived strict compliance with paragraph 9, and that plaintiffs were entitled to assume that defendants were not requiring strict compliance with the contract. The parties to a contract can waive any provision in a contract and such waiver can be demonstrated by "conduct indicating that strict compliance with the provisions of a contract will not be required." (*Botti v. Avenue Bank & Trust Co.* (1982), 103 Ill. App. 3d 1052, 1054, 432 N.E.2d 295.) Under the circumstances of the present case, where defendants requested extensions of time long after the time for the trustee signing had passed, there was ample evidence to support the trial court's determination that defendants waived strict compliance with paragraph 9 of the rider.

■ The next contention raised by defendants concerns an alleged lack of mutuality of obligation under the contract. Paragraph 7 of the rider provided:

"7. Purchaser shall deposit with Seller an irrevocable, negotiable Letter of Credit in the amount of $72,750.00, representing the additional earnest money deposit required in Paragraph 2 of this Contract. The said Letter of Credit shall be issued by a bank satisfactory to Seller and shall be in the form approved by Seller's attorney, in his sole discretion. In the event that the Letter of Credit is not acceptable to Seller or Seller's attorney, Seller shall so notify Purchaser in writing within five (5) days from receipt thereof, and this Contract shall be null and void, and the earnest money deposit shall be returned to Purchaser."

Defendants contend that this provision, which allows the plaintiffs to approve or disapprove in their "sole discretion," shows a lack of mutuality of obligation sufficient to defeat enforcement of the contract.

Defendants rely on the case of *Gardiakos v. Vanguard Communications, Inc.* (1976), 38 Ill. App. 3d 937, 350 N.E.2d 210, where the contract allowed the buyer to withdraw on the sole condition that he do so within five days of the receipt of certain documents. The court found this language rendered the contract unenforceable. A similar result was reached in *Stender v. National Boulevard Bank* (1983), 114

Ill. App. 3d 1041, 449 N.E.2d 873, where a real estate contract gave the plaintiff the right to approve or disapprove of the documents relating to the mortgages on the property. If plaintiff disapproved the contract could be cancelled in his "sole discretion." The appellate court affirmed the trial court's finding that the contract was unenforceable due to a lack of mutuality. We deem these authorities to be distinguishable. Plaintiffs' assertion that this clause was put in for the benefit of the defendants so they would not have to come up with cash is extrinsic to the unambiguous terms of the contract. However, the fact remains that defendants could always have paid the earnest money by tendering cash. By tendering cash, the contract would have been binding as to the plaintiffs in accordance with paragraph 2 of the original contract, which provided in substance as follows:

"2 - Initial earnest money $1,000 in the form of personal check dated 2/24/81 payable to Realty World Ayars. Upon acceptance of this offer, said check shall be properly endorsed by payee and deposited by Gilbert Rayner as broker. The earnest money shall be increased to 10% of purchase price within 10 days after acceptance hereof. Said initial earnest money shall be returned, and this offer shall be void if not accepted on or before 9/15/81."

We note that defendants present this theory for the first time on appeal. They did not present this to the lower court, nor was it brought to the court's attention in their motion for reconsideration. Also, to claim that the contract was unenforceable due to lack of mutuality constitutes an inconsistent position with the counterclaim that they filed in the lower court. The counterclaim was based on a position that the plaintiffs had breached the contract for which defendants sought damages. Such inconsistency is not permissible. (*Monroe County Water Cooperative v. City of Waterloo* (1982), 107 Ill. App. 3d 477, 480, 437 N.E.2d 1237; *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 298-99, 372 N.E.2d 926.) For these reasons, defendants' contention of lack of mutuality must fail.

■ Lastly, defendants contend that the court erred in awarding plaintiffs $73,750 in damages. This amount was established by paragraph 2 of the original contract, which required $1,000 earnest money, and paragraph 7 of the rider, which required $72,750 in additional earnest money. The $72,750 was put up by the defendants in the form of a note bearing interest at 15% and was the basis of count II of the complaint.

Defendants contend that the trial court erred in lumping all the earnest money together, and applying paragraph 8 of the contract to

the entire sum. Paragraph 8 required the broker would hold the earnest money and that, if the purchaser defaulted, the earnest money would be forfeited and paid to the seller. The defendants contend that their damages should have been limited to $1,000.

Paragraph 1 of the rider provides as follows:

"1. In the event of any conflict between the printed portion of the contract and this Rider, the terms of this Rider shall prevail."

Paragraph 3 of the rider provides as follows:

"3. The Earnest Money is to be deposited in a federally insured interest-bearing account or instrument for the benefit of Purchaser. However, should this Contract be terminated by reason of acts, omissions or through other default of the Purchaser, then the interest shall be forfeited and paid to Seller."

Defendants argue that paragraphs 3 and 7 of the rider as set forth herein change the agreement. They point out that the rider provided that in any conflict between the contract and rider, the terms of the rider shall prevail. However, it is not clear that there is a conflict here. Paragraph 3 of the rider provides that purchasers' default will result in a forfeiture of the *interest* to seller. Paragraph 7 provides that if the letter of credit is not acceptable, the contract is void and "the earnest money deposit shall be returned to Purchaser." Thus, under the terms of the rider only, purchaser would only stand to lose the interest on $72,750. However, the rider does not say what happens to the $72,750 if purchaser defaults for reasons other than an unacceptable letter of credit. Thus, reference to the original contract becomes important, and, as indicated, paragraph 8 required a forfeiture of earnest money if purchaser defaults.

The trial court merely applied the language of the original contract to the earnest money required to be posted by the terms of the rider. This does not create a conflict in the terms of the contract. Although the result seems harsh, it was required by the contract language.

■ Defendants also urge that the note was not given as a bearer instrument, but only as earnest money to be replaced by the letter of credit. Defendants do not provide any argument to support this assertion. It should be mentioned that the note does not on its face contain a due date. The lack of a time for payment makes the note a demand note. (Ill. Rev. Stat. 1983, ch. 26, par. 3—108; *Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 417 N.E.2d 806.) The trial court, in viewing the contract and rider as one agreement, properly applied the

forfeiture provisions. Further, once defendants admitted their signatures on the notes and did not establish a defense, plaintiffs were entitled to recover on the note. (Ill. Rev. Stat. 1983, ch. 26, par. 3—307.) The judgment of the circuit court of Lake County granting the motion for summary judgment is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.