LONG GROVE COUNTRY CLUB ESTATES, INC., Plaintiff, *v.* ROY C. ANDERSON *et al.*, Defendants.—ROY C. ANDERSON *et al.*, Counterplaintiffs-Appellants, *v.* LONG GROVE COUNTRY CLUB ESTATES, INC., *et al.*, Counterdefendants-Appellees.

Second District (1st Division)   Nos. 75-64, 75-130 cons.

Opinion filed March 29, 1977.—Rehearing denied May 12, 1977.

Donald T. Morrison and Terrence J. Brady, both of Morrison & Nemanich, of Waukegan, for appellants.

Robert J. Anderson, of Palatine, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Because of the similarity in names between the various parties and their various positions in the numerous lawsuits involved, for the purpose of simplicity we will designate them as the owner, the developer and the Village. The term owner includes Roy C. Anderson and Astrid M. Anderson, his wife, and Long Grove Country Club, Inc., an Illinois corporation. At various times the owner is the defendant, the counterplaintiff and the plaintiff in two of the suits involved herein. The developer is the Long Grove Country Club Estates, Inc., also involving a man by the name of Robert J. Anderson. The developer at various times has been the plaintiff, counterdefendant and third-party defendant in two of the lawsuits involved herein. The Village of Long Grove, likewise, has been the defendant and third-party plaintiff in the two suits.

The owner and the developer were previously involved in a suit (*Anderson v. Long Grove Country Club Estates, Inc.* (1969), 111 Ill. App. 2d 127, 249 N.E.2d 343), wherein the owner was the plaintiff and counterdefendant and the developer was the defendant and counterplaintiff. Reference is made to that case for the facts relating to the original contract to sell 337 acres of land. That case resulted in a judgment of $252,800 against the developer for breach of contract.

The issue involved herein is whether the developer is obligated to improve Schaefer Road, which is located in the property originally belonging to the owner, in a subdivision platted by and to be developed by the developer.

The cases revolve around the interpretation and the application of the pre-annexation agreement entered into in 1962 with specific reference to paragraph Fifth of that pre-annexation agreement signed by the developer, the owner, and the Village. Paragraph Fifth reads as follows:

"FIFTH: At such time that DEVELOPER files a Plat of Subdivision containing lots fronting on Shaeffer Road [*sic*] or being dependent on access to or from Shaeffer Road [*sic*], the DEVELOPER agrees to improve Shaeffer Road [*sic*] to the standards of a collector street as defined in the Long Grove Subdivision Control Ordinance, said improvement to run from Illinois State Route No. 53 on the North to Checker Road on the South."

On January 26, 1973, the original complaint for declaratory judgment in cause No. 73-MR-14 in the trial court was filed by the developer against the owner, the Village and the Board of Local Improvements for the Village of Long Grove, seeking to interpret the rights, duties and legal relations of the owner, the developer and the Village. The complaint alleged that the prior lawsuit (*Anderson v. Long Grove Country Club*

*Estates, Inc.* (1969), 111 Ill. App. 2d 127, 249 N.E.2d 343) terminated the developer's contract to purchase all but 584 lineal feet of the property fronting on Schaefer Road and ordered that the title to the balance of the property fronting on that road be transferred back to the owners. Developer stated that the owner, therefore, had property fronting on Schaefer Road of approximately 2654 lineal feet; and that together with the other frontage property acquired by the owner, the owner had property fronting on both sides of Schaefer Road totalling 6960 lineal feet. This complaint further stated that the developer filed a petition with the Village seeking to have Schaefer Road improved by special assessment. A hearing was had on this petition and the Village adopted a resolution abandoning the proposed special assessment improvement of Schaefer Road. The complaint sought to declare the pre-annexation agreement void, or, in the alternative, to determine the rights, duties and legal relations of the owner, the Village and the developer, as to the improvement of Schaefer Road.

The second count of the complaint sought to force the Board of Local Improvements to hold further proceedings for a special assessment for the improvement of Schaefer Road. On March 2, 1973, the owner filed a countercomplaint (properly termed a counterclaim, pursuant to Ill. Rev. Stat. 1973, ch. 110, par. 38) against the developer for specific performance of the pre-annexation agreement. Both the Village and the owner moved to dismiss the original complaint. Judge Henry Caldwell dismissed the original suit on July 5, 1973. After this complaint was dismissed leave was given the developer to file an amended complaint within 30 days. No amended complaint was filed, nor was the order of dismissal of the original complaint cross-appealed from by the developer. The developer then filed a motion to dismiss the counterclaim. The motion to dismiss the counterclaim was denied by Judge Caldwell after filing a memorandum opinion in which he stated,

> "While the contract as between the counter-defendant [developer] and the Village is clearly an annexation agreement, it also incorporates substantial rights and duties not directly concerned with annexation."

On October 2, 1974, after a hearing before Judge Doran, judgment was entered without comment finding in favor of the developer and against the owner on the owner's counterclaim.

On November 1, 1974, the owner filed a complaint for specific performance against the Village in cause No. 74-CH-407. On November 21, 1974, the Village, in turn, filed a "third-party complaint" against the developer, seeking determination of whether the owner or the developer was to perform the contract involved, being the above-mentioned pre-

annexation agreement. Upon motion by the developer after a hearing of cause No. 74-CH-407, the complaint and the "third-party complaint" of the Village were dismissed.

The appeal herein is by the owner in both cases.[1]

In cause No. 73-MR-14 Judge Caldwell issued a memorandum opinion on August 31, 1973, wherein he distinguished between the provisions of the pre-annexation agreement relating to the Village and those relating to the developer and the owner. He stated:

> "The annexation agreement here contains a covenant, as indicated, running with the land, which is for the benefit of all lot owners, one of which is the Long Grove Country Club Estates, Inc., the Developer."

In refusing to dismiss the counterclaim, Judge Caldwell therefore found that there was, as a matter of law, a covenant running with the land for the benefit of the owner. In the owner's reply to the answer to the counterclaim, filed August 28, 1974, the owner alleged:

> " * * * that the agreement by its own terms in paragraph 'SECOND' provides that it constitutes the covenant running with the land and the agreement between the parties hereto is severable and supported by independent consideration."

We thus reach, at this point, the interpretation of the second paragraph of the pre-annexation agreement reading as follows:

> "SECOND: That upon a proper Petition for Annexation being filed by the OWNER, the VILLAGE agrees by proper ordinance to annex the property described in Exhibit 'A' hereto attached and herein incorporate by reference. The DEVELOPER and the OWNER agree that the premises described in Exhibit 'A', hereto attached, will never be disconnected from the Village except by consent of the Village Board, and that this Agreement constitutes a Covenant running with the land and binding upon all grantees, successors and assigns of the OWNER and DEVELOPER."

Applying the general rules of construction that a document should be construed as a whole and the words should be construed harmoniously throughout the document, we find that the term "this Agreement" refers to the entire pre-annexation agreement. (*Herbert Shaffer Associates, Inc. v. First Bank of Oak Park* (1975), 30 Ill. App. 3d 647, 332 N.E.2d 703.) We therefore find that the pre-annexation agreement did constitute a covenant running with the land creating a right enforceable by the lot

---

[1] At this point it is interesting to note that since the filing of the appeals herein the Village of Long Grove has, in fact, filed a complaint against the developer for a decree of specific performance, requiring it to perform its obligations under the pre-annexation agreement for the improvement of Schaefer Road. This is cause No. 76-CH-14, filed in the circuit court of Lake County and the record herein does not disclose any further action in this cause other than the filing of the complaint herein.

owners to have the developer improve Schaefer Road as called for in paragraph Fifth of the pre-annexation agreement.

## I.

We turn now to the first contention of the owner, that the judgment on the counterclaim in favor of the developer was against the manifest weight of the evidence. In support of this contention the owner argues that to sustain the judgment in favor of the developer herein it was necessary for the court to make one of two findings: either that the owner had failed to prove its case for specific performance under the counterclaim, or that the developer's performance was excused as a matter of law under developer's proofs in support of its alleged affirmative defenses. Having considered the record as a whole, in a light most favorable to the developer, we find that the evidence does not support either finding and Judge Doran's order denying the owner any relief on its counterclaim is against the manifest weight of the evidence.

■■ The owner established a prima facie case entitling it to specific performance of the developer's covenant running with the land to improve Schaefer Road. In its answer to the counterclaim, the developer admitted: (1) the signing of the pre-annexation agreement; (2) that the owner complied with the provisions of the pre-annexation agreement; (3) the provisions of paragraph Fifth of the pre-annexation agreement as pleaded by the owner; (4) that the developer had filed plats of subdivision showing lots fronting on or dependent on Schaefer Road for access; and (5) that Schaefer Road was unimproved and that the developer had not improved it. The developer made no contention that the fifth paragraph of the pre-annexation agreement was ambiguous, and the court did not find it to be ambiguous. Therefore we find that the owner met its burden of proof to entitle it to specific performance of the covenant.

The owner next contends, and we agree, that the burden of proof shifted to the developer to present satisfactory evidence in support of its affirmative defenses in order to excuse its obligation to build Schaefer Road. Finally, the owner argues that the developer failed to prove any of its affirmative defenses. Although we agree with this conclusion, we will briefly discuss each such alleged defense, and why we believe it inapplicable or unproven.

■■ The first affirmative defense was that section 11—15.1-5 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—15.1-5) barred the suit. That statute clearly applies only to pre-annexation agreements. It has no application to this suit by the owner to enforce a covenant running with the land—*viz.*, that the developer would improve Schaefer Road.

The second affirmative defense raised by the developer is that the

owner was guilty of laches in not seeking to have the developer construct or improve Schaefer Road until almost nine years had passed since the plats of subdivision were filed. It appears that this part of the large subdivision in question was not developed nor property sold therein until a somewhat recent date, if at all. It is also apparent that the owner did not acquire the 47 lots which are dependent upon Schaefer Road for access until the termination of the previous law suit. Roy C. Anderson, one of the owners, testified that he did not find out that the developer did not plan to improve Schaefer Road until shortly before the developer filed its petition seeking to have the road improved by special assessment. Indeed the testimony on behalf of the developer was that it did not plan to develop the area around Schaefer Road until years after the discussions which resulted in the signing of the pre-annexation agreement, and that the Village never required a specific time within which the road had to be paved.

Considering the evidence we hold that any delay by the owner in filing suit to protect his interest in the developer's covenant to build Schaefer Road was not an unreasonable delay and therefore was not laches.

■■■ The next affirmative defense raised by the developer is that of waiver and rescission. There is, for course, no explicit waiver or rescission of the pre-annexation agreement or the covenant running with the land. Developer's contention is that in the prior lawsuit (*Anderson v. Long Grove Country Club Estates, Inc.* (1969), 111 Ill. App. 2d 127, 249 N.E.2d 343) the owner did not assert his alleged rights for the improvement of Schaefer Road and that this constituted a waiver of the requirement under the pre-annexation agreement that the developer improve Schaefer Road. Developer also contends that his duties under the agreement were predicated upon his status as contract purchaser of 337 acres and that when that contract was partially rescinded in the prior lawsuit and the developer did not receive all of the lots as contracted, his duties under the pre-annexation agreement were also rescinded. We note that both of these arguments go only to enforcement of the pre-annexation agreement. Inasmuch as this is a suit to enforce a covenant running with the land, these arguments are inapplicable.

■■ The next affirmative defense raised by the developer is that of impossibility. As the basis for this argument the developer stated that it did not own the land necessary to improve Schaefer Road and that the Village of Long Grove, likewise, did not own all the land necessary to make such improvements. The evidence presented by the developer was that only 165 lineal feet of the 5400 lineal feet of Schaefer Road had been dedicated for an 80′ right-of-way. The developer's original plat of subdivision filed in 1964-65 showed a 40′ dedication by the developer which, together with the township dedication of 25′ made a total

dedication of 65'. The Village requirements for a collector street provide for a width of 80'. In the original instance the developer could have dedicated 55' to supplement the 25' township dedication which would have attained the 80' requirement. This it did not do nor did it make any effort to acquire land from adjoining property owners, one of whom testified he would be willing to dedicate the necessary portion of his lands. Likewise, no effort was made to seek a variation to the 80' requirement of the ordinance. We therefore find that the developer's defense of impossibility is without merit.

■■ The next affirmative defense is that of commercial frustration. The factual basis of this alleged defense is closely interwoven with that of the prior alleged affirmative defense of waiver and rescission. The argument is that at the time the pre-annexation agreement was entered into, the developer had the right to purchase 114 lots, either fronting on or dependent upon Schaefer Road for access; that as a result of the prior lawsuit this was reduced to 68 lots and therefore it was commercially frustrated. Our examination of the record indicates that this defense was waived before trial when counsel for the developer refused to produce books and records concerning profit margins and costs and agreed not to pursue those matters in detail. When this was brought to the attention of the trial judge, he did not allow any testimony on profit margins although he had previously received testimony concerning the cost of developing the road and the cost per lot spread over the number of lots the developer still owned. Thus, while the record supports the general proposition that the developer's costs would be increased, and thus perhaps his profits might decrease, it certainly does not support a finding of hardship rising to the level of commercial frustration. Finally, we must note that the only reason developer lost the rights to buy the 47 lots which still belong to the owner is that it breached its separate contract with the owner. We have found no authority which recognizes the defense of commercial frustration under such circumstances.

■■ The last affirmative defense raised by the developer is that of "unjust enrichment" or a "windfall" to the owner. In support of this argument the developer has presented no authority. The argument, however, is based on the fact that of the 10,570 lineal feet of frontage on both sides of Schaefer Road the owner now owns 6960 lineal feet and the developer but 584 feet. The argument, however, overlooks the fact that both the developer and the owner undertook certain obligations which became, pursuant to the terms of the pre-annexation agreement, covenants running with the land. The entire subdivision involved in these suits and in the prior suit consisted of 271 lots comprising 337 acres. As a part of the pre-annexation agreement the owner was to construct an 18-hole golf course located roughly in the middle of the entire subdivision.

This the owner did at a cost of over $1,000,000. The westerly part of the subdivision consisted of 156 lots, almost all of which have been developed and sold by the developer. The easterly part of the subdivision consisting of approximately 115 lots is dependent upon Schaefer Road for access. At the time of the instant suit the developer owned 68 of these lots and the owner was in title to 47 lots. Our examination of the "exhibits" herein indicates that developer still owns approximately 54 lots in this portion of the subdivision which front on the golf course. Further, the uncontradicted testimony is that lots located on the golf course have sold for at least $2,000 more than those not so located. Thus, the developer has received, and will continue to receive, the benefits of the owner's performance. Under such circumstances, there is no unjust enrichment to the owner by making the developer perform its obligations. The owner will merely receive the benefits to which it was entitled.

Thus we conclude that none of the developer's original affirmative defenses are supported by the record before us.

## II.

We turn next to the second contention of the owner that the trial court committed reversible error in allowing the developer to add an affirmative defense after the conclusion of the trial as follows:

"(h) Any promise contained in Paragraph Fifth of the Pre-Annexation Agreement was not made to the counter plaintiffs [owners], nor for their benefit; counter plaintiffs [owners] have not been damaged, nor could they be damaged by counter defendant's [developer's] alleged breach of Paragraph Fifth of the Agreement. Accordingly, counter plaintiffs [owners] have no standing to complain of any such breach."

In connection with this the owner contends that this reversible error was compounded by the court's refusal to allow the owner to file an amendment to its counterclaim in answer to this contention. The owner contends had this paragraph been included in the answer of the developer, that the owner would have been able to bring the Village back into the lawsuit under an appropriate amendment, contending that either it or the Village could seek relief against the developer under the fifth paragraph of the pre-annexation agreement obligating the developer to construct the road.

■■ Inasmuch as we have previously discussed the fact that, properly interpreted, the fifth paragraph became a covenant running with the land, it is obvious that any owner of lots in the subdivision which were dependent on Schaefer Road for access had standing to enforce the covenant. Thus, the owner clearly had standing and the alleged defense was no defense at all. For that reason, we need not pass on whether the

trial court abused its discretion in allowing the developer to add the defense or refusing to allow the owner to amend its counterclaim.

## III.

■■ The next contention of the owner is that the trial court committed reversible error in dismissing cause No. 74-CH-407. After the entry of the judgment order against it in No. 73-MR-14, the owner filed a complaint against the Village in an independent proceeding seeking enforcement of the provisions of the pre-annexation agreement. The Village filed an answer and a "third-party complaint" against the developer. The developer filed a motion to dismiss the original complaint. The trial court granted the developer's motion and dismissed the owner's complaint in this lawsuit as well as the "third-party complaint" of the Village. The motion to dismiss the complaint in substance was, first, that the complaint failed to state a cause of action; secondly, that the matters alleged in the complaint were adjudicated in cause No. 73-MR-14 and; thirdly, that the owner had appealed in cause No. 73-MR-14 which constituted a prior action pending within the meaning of section 48(c) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 48(c)). An amendment to the developer's motion to dismiss this complaint alleged that the developer had filed the plat of subdivision on April 8, 1964, and that the complaint in No. 74-CH-407 was not filed until more than 10 years after April 8, 1964, and was therefore barred by the 10-year statute of limitations. Ill. Rev. Stat. 1973, ch. 83, par. 17.

The amended motion further stated that the pre-annexation agreement was executed in October 1962 and that the original complaint in No. 74-CH-407 was not filed until November 1974, more than 12 years later, and was therefore barred by section 11—15.1-5 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—15.1-5). The court in its order allowing this motion and dismissing cause No. 74-CH-407 did not state the grounds upon which this complaint was dismissed.

We note first that the complaint in No. 74-CH-407 was clearly an attempt to enforce the pre-annexation agreement entered into in October 1962. Section 11—15.1-5 was first added to the Illinois Municipal Code by an act passed July 31, 1963. At that time the section validated pre-existing agreements which met the stated requirements "for the effective period of such agreement, or for 5 years from the date of execution thereof, whichever is shorter." (Ill. Rev. Stat. 1963, ch. 24, par. 11—15.1-5.) Pursuant to that statute, the pre-annexation agreement herein would not have been effective after October 1967. Effective October 1, 1973, the legislature amended section 11—15.1-5 to validate such agreements for a period of 10 years from date of execution. (Ill. Rev. Stat. 1973, ch. 24, par. 11—15.1-5.) Assuming for the moment that that 10-year period might

properly be applied to the agreement herein, it would have become unenforceable after October 1972. We therefore do not have to decide which of these enactments applies to the agreement in question. Regardless of which period is applied to it, the complaint in No. 74-CH-407, which was not filed until November 1, 1974, indicated on its face that it was barred by the provisions of section 11—15.1-5. Therefore, the trial court's action in dismissing the complaint was proper upon this basis, and we need not consider the other alleged grounds for dismissal.

Having considered all of the owner's contentions, we conclude that the judgment rendered by the trial court in No. 73-MR-14 is reversed, and the case is remanded with directions to enter an order granting the owner specific performance as prayed for in the counterclaim. As to No. 74-CH-407, the judgment of the trial court is affirmed.

Affirmed in part; reversed in part, and remanded with directions.

RECHENMACHER and SEIDENFELD, JJ., concur.