JOHN GIANNINI, d/b/a J. G. Sewer Contractors, Plaintiff-Appellant, v. FIRST NATIONAL BANK OF DES PLAINES, Trustee, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 84—298

Opinion filed September 12, 1985.

Alan L. Stefaniak and Albert Koretzky, both of Di Monte & Lizak, of Chicago, for appellant.

Altheimer & Gray, of Chicago (Robert I. Berger, of counsel), for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

John Giannini, d/b/a J. G. Sewer Contractors (Giannini), executed an agreement to purchase a condominium unit in the Castilian Courts Condominium Complex to be constructed in Glenview and paid $62,330 in earnest money on the property. Although the building in which his unit was located was subsequently constructed, it was never formally declared a condominium and as a result the terms of the agreement were never fulfilled.

Giannini filed a two-count complaint against First National Bank of Des Plaines (Des Plaines Bank), the record title holder of the complex pursuant to a land trust agreement; Frank R. Stape Builders, Inc. (Stape Builders), the developer of the project and signer of Giannini's purchase agreement as agent of the beneficiary of the trust in which title to the complex was held; and Unity Savings Association (Unity),[1] a mortgage holder on the property. His complaint requested specific performance of the purchase agreement by Unity, Stape Builders and Des Plaines Bank (count I) and money damages from Stape Builders and Des Plaines Bank (count II).

Pursuant to Unity's motion to dismiss based upon certain affirmative defenses or matters, Unity contended specific performance was not an appropriate remedy and that the agreement was invalid. (Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(9).) The trial court dismissed the specific performance count as to Unity but refused to render its order final and appealable under Illinois Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)). Eleven months later, Giannini motioned the court for leave to file an amended complaint. This proposed document

---

[1]The record shows that Talman Home Federal Savings and Loan Association is now the successor to Unity. Nevertheless we refer to this defendant as Unity for the sake of clarity.

consisted of counts which sought specific performance (count I), money damages (count II), imposition of a constructive trust (count III), and foreclosure of a vendee's lien (count IV). The trial court denied the motion and found that there was no just reason to delay enforcement or appeal. Giannini now appeals both from the order which dismissed count I and the order which denied him leave to file the amended complaint.

The record contains the following relevant pleading and documentary evidence. Giannini filed his complaint on October 19, 1981. In the count for specific performance, he alleged in pertinent part that on or about March 27, 1980, he entered into a written agreement with Stape Builders as agent for the beneficiaries of the land trust to purchase a specified condominium unit for the sum of $79,515. He stated that although construction of the premises had been completed, Stape Builders and Des Plaines Bank refused to perform their obligations under the terms of the purchase agreement. He also alleged that Unity had or purported to have an interest in the unit. Giannini claimed that he was ready, willing, and able to fulfill his obligations under the agreement and requested specific performance of the contract because he had no adequate legal remedy.

Giannini attached a copy of the purchase agreement to his pleadings and incorporated it therein by reference. The document clearly designated Stape Builders as "Seller" and as such the "Agent of Beneficiaries of First National Bank of Des Plaines, not personally, but as Trustee under Trust No. 73711759." The contract specified the particular unit which Giannini was to receive (unit B-70), set forth its common and legal description, stated a total purchase price of $79,515, and required Giannini to pay $62,330 as earnest money.[2]

The contract further recognized that the entire project was on-going and in the course of construction, such that adjacent parcels might be subsequently developed, annexed to the condominium area, and submitted to condominium ownership through supplementation or amendment of the Condominium Declaration.

---

[2]The contract also provided that such earnest money deposited by the purchaser would be placed in a separate escrow account by the seller. This term complied with section 24 of the Condominium Property Act (Ill. Rev. Stat. 1981, ch. 30, par. 324), which further requires that all such escrow accounts earn an annual interest rate of 5% to be credited to the balance due from the purchaser at closing. Neither Giannini nor Unity has stated nor offered proof of whether Stape Builders or Des Plaines Bank ever placed Giannini's earnest money deposit into such an escrow account, nor has Giannini requested that any of the party-defendants be ordered to establish such an account. See *Barrett v. Lawrence* (1982), 110 Ill. App. 3d 587, 442 N.E.2d 599.

The record reflects that the property was placed in land trust with the Des Plaines Bank pursuant to trust agreement dated January 31, 1977. The document named "First Charter Service Corp., an Illinois corporation" (First Charter), as owner of the beneficial interest in the trust. The agreement recited that the beneficial owner's interest "shall consist solely of a power of direction to deal with the title to said real estate and to manage and control said real estate as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said real estate ***." It further provided that the "right in the avails of said real estate shall be deemed to be personal property, and may be assigned and transferred as such ***."

First Charter assigned its beneficial interest pursuant to written agreement to Frank R. Stape Builders, Inc., on February 28, 1977. Stape Builders subsequently assigned its beneficial interest to Frank A. Stape pursuant to written agreement on January 12, 1980. A notation on each of the documents indicated receipt of a duplicate copy thereof by Des Plaines Bank.

Roughly a year later, on April 10, 1981, Frank A. Stape executed a power of direction to convey title to specified property at the Castilian Courts Complex to Janet Strong Wade through conveyance of a trustee's deed. A notation on the power of direction indicated that Unity acknowledged and accepted the conveyance. Des Plaines Bank complied with the direction in a trustee's deed dated April 10, 1981. According to the affidavit of an officer of Des Plaines Bank submitted by Giannini to the trial court, this conveyance pertained to all remaining property in the land trust and rendered the trust empty of any property.[3]

Stape Builders was involuntarily dissolved by the Secretary of State of the State of Illinois on December 1, 1981, for failure to pay franchise taxes.

Unity apparently obtained title to the complex in lieu of foreclosure of its mortgage on the property. Although the exact date upon which Unity began its foreclosure action in Cook County circuit court is unclear from the record before us, documents presented by Giannini revealed the following pertinent information in this regard.

On April 13, 1981, Unity filed in the foreclosure proceeding its

---

[3]There is no explanation from any party of whether the land trust was subsequently closed in view of this final conveyance. The trust agreement itself contained no explicit provision for closing of the trust. We therefore proceed on the assumption that the land trust is an open, but empty, trust arrangement.

motion to dismiss Des Plaines Bank and Stape Builders, to terminate a receivership over the property, and to voluntarily dismiss the foreclosure action. Unity's motion alleged in relevant part that it had "succeeded to the rights of [Des Plaines Bank and Stape Builders] [to the condominium complex] and, therefore, can manage, operate and control the property involved in this cause by itself." The trial court entered its written order which granted Unity's motion on April 16, 1981. The court specifically noted that it had heard "testimony from Mr. Howard Harris, an officer of [Unity] of its intention to complete the project," and further stated that it was "relying on these representations, a transcript of which will be filed herein ***." The court also stated that it would "retain jurisdiction hereover to see to the completion of the matter left pending hereby." According to Giannini, no transcript as specified by the court was ever prepared.

Although Unity thus apparently agreed in its foreclosure action that it would carry out the development plans of Stape Builders, it nevertheless argued, *inter alia*, before the trial judge presiding over Giannini's complaint that specific performance should not be ordered because it would be uneconomical to Unity in view of poor real estate conditions. In support of this contention, Unity presented the affidavit of Mrs. Virginia Erikson, real estate administrator for Unity responsible for various matters at the Castilian Courts Complex. In her affidavit, Erikson stated that the entire condominium project consisted of five buildings (A, B, C, D, and E) with a total of 256 units. She stated that although all buildings were originally intended to be condominiums only buildings D and E had been so recorded; buildings A, B (in which Giannini's unit was located) and C were instead rental buildings. Erikson stated that these other buildings had not been declared as condominium buildings because of the poor economy and in particular "the unsalable real estate and condominium market."

A copy of a declaration of condominium ownership made and recorded by Des Plaines Bank was submitted to the trial court by Giannini. The document had been executed by the bank on February 28, 1980, and specified Stape Builders as developer of the complex. In part relevant to this appeal, the declaration contained a provision for annexation of additional property to be declared as part of the condominium project. Paragraph 1 of article X of the declaration stated that the developer reserved "the right from time to time and in any order, within ten (10) years of the date of the recording of this Declaration, to annex and add to the Condominium area created by this Declaration, all or any portion of the real property" in the development area. Subsequent paragraphs set forth the manner and proce-

dure by which adjustments in a unit owner's interest in the common elements would be made upon amendment of the declarations as well as provision for further understandings and agreement not pertinent here. Attached to the declaration there also appeared the acknowledgement and acceptance of the declaration by Unity as mortgage holder on the Castilian Courts Condominium Complex. The record does not disclose whether any subsequent amendments to this Declaration have ever been executed or recorded.

Unity filed its motion to dismiss count I of the complaint on the basis of affirmative matter which avoided the legal effect of or defeated the claim stated in that count (see Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(9)) on April 14, 1982. As ultimately amended, the motion claimed in pertinent part that specific performance was improper for several reasons. These grounds for dismissal were: (1) the unit did not exist since the building in which the unit was located had not been declared a condominium in accordance with the provisions of the Condominium Property Act (Ill. Rev. Stat. 1981, ch. 30, pars. 301 *et seq.*); (2) the condominium unit was not so unique to require specific performance of a purchase agreement of the unit; (3) specific performance would be unprofitable to Unity in view of poor real estate market conditions; (4) specific performance would be too burdensome and time-consuming for the court to enforce because it would require that the court issue a mandatory injunction to complete conversion of the building into a condominium; (5) the purchase agreement was invalid and unenforceable because it was neither signed by the trustee of the trust nor the beneficiary of the trust; and (6) the purchase agreement was invalid and unenforceable because it did not expressly provide that the beneficiary would exercise his power to direct the land trustee to convey the real estate to the purchaser at closing.

Upon consideration of the parties' pleadings, documents, and written and oral argument, the trial court granted Unity's motion to dismiss count I of the complaint as to Unity. In its oral pronouncement, the court concluded that specific performance was improper because: (1) there was no condominium "in existence" which Unity could be ordered to convey to Giannini; (2) the remedy would be economically disadvantageous to Unity; and (3) the remedy would be cumbersome and time-consuming because it would obligate the court to supervise conversion. The trial court denied Giannini's oral motion in open court to find that there was no just reason to delay enforcement or appeal. The court's written order which granted the motion to dismiss did not specify grounds for the judgment.

About 11 months later, Giannini presented his motion to file an

amended complaint. The proposed amended pleading contained counts which sought specific performance from Unity, Stape Builders, Frank A. Stape, and Des Plaines Bank (count I), money damages from Stape Builders and Des Plaines Bank (count II), imposition of a constructive trust upon the unit against Unity (count III), and foreclosure of a vendee's lien upon the property against Unity (count IV).

Unity advanced several grounds for its objections to the motion to amend the pleadings. First it contended that the motion should have been presented as a motion to vacate the trial court's order which dismissed count I (see Ill. Rev. Stat. 1981, ch. 110, par. 2—1203) rather than a motion to amend the pleadings (see Ill. Rev. Stat. 1981, ch. 110, par. 2—616), because the proposed amended complaint included the count which the trial court had previously dismissed. In addition Unity argued that the motion to amend, even if proper under section 2—616 of the Code of Civil Procedure, nevertheless should be denied because it was untimely since count I had been dismissed almost a year earlier. It further claimed that the motion should be denied because it was prejudicial to Unity in that all claims against it had been dismissed almost a year prior, and that the motion should be denied on the basis that it was barred by *res judicata* because the court's previous order had dismissed all claims against Unity.

Giannini responded that the motion was a proper one to bring under section 2—616 of the Code because final judgment on all of the counts in his pleading had not yet been entered. He further claimed that the amendment was not untimely since the action had not yet gone to trial and was still at the pleading stage. He argued that amendment would cause no prejudice to Unity because the trial court had retained jurisdiction over the specific performance count by refusing to find no just reason to delay enforcement of or appeal from that order. Lastly he contended that amendment was not barred by *res judicata.*

Based upon the parties' written and oral arguments, the trial court denied Giannini's motion to file the amended complaint. Its oral pronouncements indicate that the court concluded that the motion was untimely. The court's written order generally denied Giannini's motion to amend, and further found no just reason to delay enforcement or appeal. After his motion for rehearing was denied, Giannini filed this timely appeal to challenge the propriety of the trial court's dismissal of the specific performance count and denial of leave to file the amended complaint.

■ We first consider the trial court's dismissal of count I of the original complaint, which sought specific performance of the purchase

agreement. Unity's motion to dismiss was denominated as one brought under section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(9)). The purpose of this provision is to allow defendants to raise affirmative defenses not otherwise specified in that section. (See, *e.g., In re Estate of Bajonski* (1984), 129 Ill. App. 3d 361, 365, 472 N.E.2d 809.) The term "affirmative matter" of this section does not encompass evidence offered to refute a well-pleaded fact stated in the complaint; instead, it includes evidence "in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint \*\*\*. [Citations.]" (*Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 94, 405 N.E.2d 1256.) The general question presented for our review is thus whether the grounds alleged by Unity were such that they either negated Giannini's cause of action altogether or refuted crucial conclusions of law or conclusions of material fact unsupported by Giannini's pleadings.

Unity first claimed that dismissal of the specific performance claim was appropriate because the condominium unit was not in existence. It argued that the unit was nonexistent because the building in which it was located had not been declared a condominium building.

Generally, "[w]here it is out of the power of the defendant to perform the agreement, such fact necessarily constitutes a sufficient reason why the court should refuse to decree specific performance, that is, to enter a decree which would be nugatory, because of the impossibility of enforcing its execution." (*Saur v. Ferris* (1893), 145 Ill. 115, 118-19, 34 N.E. 52; see also *Long Grove Country Club Estates, Inc. v. Anderson* (1977), 47 Ill. App. 3d 449, 456-57, 362 N.E.2d 374; *Leeb v. Du Melle* (1950), 342 Ill. App. 158, 95 N.E.2d 512 (abstract of opinion).) Thus, "specific performance cannot be decreed of an agreement to convey property which has no existence or to which the defendant has no title \*\*\*." *Sellers v. Greer* (1898), 172 Ill. 549, 558, 50 N.E. 246; see also *Kennedy v. Hazleton* (1888), 128 U.S. 667, 671, 32 L. Ed. 576, 577, 9 S. Ct. 202, 203; *Farson v. Fogg* (1903), 205 Ill. 326, 345, 68 N.E. 755.

■ Unity argues that Giannini's unit does not "exist" because the building in which it is located has not been declared a condominium. Thus, Unity claims that it is impossible for it to perform the obligations of the purchase agreement. We find this reasoning unpersuasive. The record demonstrates that the unit in question does indeed exist in a literal, physical sense of the term. The "non-existence" to

which Unity refers, in contrast, is of a figurative, legal nature: in order to come into "existence," the unit need simply be declared a condominium pursuant to the legal requirements of the Condominium Property Act (Ill. Rev. Stat. 1981, ch. 30, par. 325). As a result any form of "non-existence" of the unit is nothing more than a direct result of Unity's refusal to declare the building as a condominium. Consequently, we are unconvinced that specific performance was properly denied here on the ground that the unit was "non-existent" and any conveyance thereof thus impossible.

Unity also contends in this context that specific performance was properly denied because there was a lack of mutuality of obligation and remedy between itself and Giannini. Specifically, it claims that mutuality is lacking because Giannini could not be compelled to purchase a nonexistent condominium unit. We recognize that mutuality of remedy is generally required before a court can specifically enforce a contract. (See *Cohen v. Kosden* (1949), 402 Ill. 429, 434, 84 N.E.2d 358; *cf. Gould v. Stelter* (1958), 14 Ill. 2d 376, 382, 152 N.E.2d 869.) Nevertheless, we disagree with Unity's analysis in this regard, as it turns its own failure to comply with the agreement into a bar to Giannini's entitlement to a unit he had long ago agreed to purchase. We note that the decision of *Con-Dev of Vero Beach, Inc. v. Casano* (Fla. App. 1973), 272 So. 2d 203, upon which Unity relies, is inapposite to the case at bar, as in *Con-Dev of Vero Beach* the unit which the plaintiff-purchaser sought to obtain through specific performance of a purchase agreement had never been built at all. In any event it is not a controlling precedent upon this court, since it is a decision of a foreign jurisdiction.

█ The second reason stated by Unity for dismissal of Giannini's claim is that specific performance was not imperative because a condominium is not so unique as to require such relief. Thus, Unity seeks to distinguish condominium units from other types of real property.

The Condominium Property Act (Ill. Rev. Stat. 1981, ch. 30, pars. 301 *et seq.*) does not define the term "condominium." The word has been defined in other jurisdictions as "an estate in real property consisting of an undivided interest in a portion of a parcel of real property together with a separate fee simple interest in another portion of the same parcel." (*Dutcher v. Owens* (Tex. 1983), 647 S.W.2d 948, 949; see *Gerber v. Town of Clarkstown* (1974), 356 N.Y.S.2d 926, 927, 78 Misc. 2d 221, 222; *Andrews v. City of Greenbelt* (1982), 293 Md. 69, 71, 441 A.2d 1064, 1066; see also Ill. Rev. Stat. 1981, ch. 30, pars. 320(c) (definition of "Property"); 302(e) (definition of "Common Elements"); 302(g) (definition of "Unit Owner"); 302 (exemption from

certain rules relating to real property).) Based upon this jurisprudence, we conclude that a condominium is real property.

Illinois courts have long held that where the parties have fairly and understandingly entered into a valid contract for the sale of real property, specific performance of the contract is a matter of right and equity will enforce it, absent circumstances of oppression and fraud. (*Hayes v. Disque* (1948), 401 Ill. 479, 488, 82 N.E.2d 350; *Bissett v. Gooch* (1980), 87 Ill. App. 3d 1132, 1139, 409 N.E.2d 515; *Rootberg v. Richard J. Brown Associates* (1973), 14 Ill. App. 3d 301, 302, 302 N.E.2d 467.) "Contracts to devise or convey real estate are enforced by specific performance on the ground that the law cannot do perfect justice." (*Hagen v. Anderson* (1925), 317 Ill. 173, 177, 147 N.E.. 791.) Thus "[w]here land, or any estate therein, is the subject matter of the agreement, the inadequacy of the legal remedy is well settled, and the equitable jurisdiction is firmly established ***." 4 J. Pomeroy, Equity Jurisprudence sec. 1402, at 1034 (5th ed. S. Symons 1941).

Unity argues that these rules should not obtain here because "exactly the same condominium units are available to Plaintiff in the two other buildings which have been converted to condominium in the same development." To support this claim, Unity notes that buildings D and E of the complex are already condominium buildings.

We find this argument insufficient ground to avoid application of the rules set forth above pertaining to specific performance of real estate purchase agreements in general. We observe that Unity has not attempted to claim that a condominium unit is not a type of realty. Furthermore, even if we assume that similarity between Giannini's unit and those of other buildings in the complex would be sufficient ground to deny specific performance in certain circumstances, we note that there is nothing in the record to indicate the degree of similarity, if any, between the unit which Giannini contracted to purchase and those which have been declared condominium and are for sale as such. There is moreover no evidence to establish the price, terms, or conditions under which such units have been sold or are likely to be for sale. As a result there is no adequate basis for comparison of the sale of these units and the purchase agreement which Giannini stands ready to perform. Under these circumstances, we find unpersuasive Unity's contention that a condominium unit should be treated differently than other forms of realty with regard to specific performance of an agreement to purchase the property.

Lastly we note that Unity concedes that it has cited no Illinois decision which adopts a *per se* rule which denied specific performance of a contract where the object of the agreement was a condominium

unit. Nor does the case of *Centex Homes Corp. v. Boag* (Ch. Div. 1974), 128 N.J. Super. 385, 320 A.2d 194, upon which Unity relies, so hold. Instead the court in *Centex* concluded that the vendor of the condominium unit could not seek specific performance of the purchase agreement because his legal remedy of money damages was adequate. The court reasoned that there was nothing unique in the sale of a unit because the facts there disclosed that one unit closely resembled another. Here, in comparison, Giannini as vendee seeks specific performance from Unity as successor in title to the original vendor. Moreover there is no proof in the record to support a conclusion that Giannini's unit was substantially similar to other units in the complex, even assuming *arguendo* that such similarity would in any way justify the creation of an exception to the general principles stated above. Lastly, as explained more fully below, it would appear that Giannini's legal remedies were inadequate, since Stape Builders was involuntarily dissolved and the land trust emptied of any interest in the condominium complex. *Centex* is thus distinguishable from the case at bar. In any event, it is the decision of a trial court of another jurisdiction and as such is not binding precedent upon this court.

■ As a third basis for dismissal, Unity argues that specific performance was properly denied because it would be uneconomical to it. Generally the decision to grant specific performance rests within the sound discretion of the trial court to be determined by the facts and circumstances of each individual case. (*Thread & Gage Co. v. Kucinski* (1983), 116 Ill. App. 3d 178, 185, 451 N.E.2d 1292.) In this regard the court should balance the equities between the parties. (*Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 179, 360 N.E.2d 785.) Accordingly, a court using its equitable powers may refuse to grant specific performance where the remedy would cause a peculiar hardship or an inequitable result. *Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 561, 312 N.E.2d 42.

Nevertheless "[t]here is no hardship in compelling the seller[4] to do what he agreed to do when he thought it was to his advantage." (*Smith v. Farmers' State Bank* (1945), 390 Ill. 374, 380, 61 N.E.2d 557.) Thus, the fact that the contract cannot be performed without great or unanticipated expense is not such an impossibility that will usually excuse performance. *Smith v. Farmers' State Bank* (1945),

---

[4]We note that Unity has not argued that it cannot be bound by the terms of the original purchase agreement even though it was not an original party to that contract. In addition Giannini has not argued that he should be permitted to recover money damages from Unity based upon breach of contract. Accordingly, we do not consider either point.

390 Ill. 374, 380.

Based upon this precedent, Unity's claim that declaration of the building as a condominium would be uneconomical to it was insufficient to establish a peculiar hardship which amounted to an oppressive or inequitable result which totally defeated or negated Giannini's claim. The record establishes that Unity had previously represented in its foreclosure proceeding that it would abide by Stape Builders' plans for the project. In other words, the evidence shows that Unity agreed to honor Giannini's contract when this was to its advantage to do so. Accordingly, it cannot now seek to avoid the agreement because of financial hardship.

■ Unity has not disputed that it made these representations in its foreclosure action. Instead it argues that the foreclosure proceeding was a separate, collateral action which has no bearing upon Giannini's claims against it here. We find this contention without merit.

A party to a lawsuit cannot maintain a certain position in one proceeding and then become a party to another suit and maintain the contrary stance. (*De Witt County Public Building Commission v. County of De Witt* (1984), 128 Ill. App. 3d 11, 25, 469 N.E.2d 689; see also *Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 181, 360 N.E.2d 785.) Such conduct is prohibited by the rule of judicial estoppel which precludes a party from adopting inconsistent positions in separate legal proceedings. (*Finley v. Kesling* (1982), 105 Ill. App. 3d 1, 9, 433 N.E.2d 1112.) The purposes of the doctrine are "to promote the truth and to prevent parties from deliberately shifting positions to suit the exigencies of the moment." (*Department of Transportation v. Coe* (1983), 112 Ill. App. 3d 506, 510, 445 N.E.2d 506.) Thus "[w]hen a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter assume a contrary position." *Finley v. Kesling* (1982), 105 Ill. App. 3d 1, 9, 433 N.E.2d 1112.

The record shows that Unity represented in its foreclosure action that it would honor and follow the plans of the land developer of the condominium project. Further, the trial court in that proceeding relied upon this representation when it permitted Unity to dismiss its foreclosure petition voluntarily. In addition, Unity received title to the project in return for this voluntary dismissal. Having benefitted from its representations that it would abide by Stape Builders' plans, Unity now seeks to maintain a contrary position in the present action and thereby avoid these representations. The rule of judicial estoppel precludes this attempt, however. Accordingly, we conclude that Unity's representations in its foreclosure action were not merely collateral

matter of no relevance to the case at bar.

■■ Unity further emphasizes that the decision to grant specific performance rests within the sound discretion of the trial court, which must balance the equities between the parties. (See *Thread & Gage Co. v. Kucinski* (1983), 116 Ill. App. 3d 178, 185, 451 N.E.2d 1292; *Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 179, 360 N.E.2d 785.) We do not disagree with Unity's recital of such jurisprudence nor its applicability to the case before us. Nevertheless we conclude based upon the record that the trial court's decision to deny specific performance based upon Unity's motion to dismiss was an abuse of its discretion.

In contrast to the benefit which Unity derived from its initial agreement to honor Stape Builders' arrangements, and even assuming, *arguendo*, that Unity would now suffer financial hardship if it were to convert the building to a condominium and convey Giannini's unit to him, the record at this juncture indicates that Giannini's loss might be even more substantial than Unity's, in that he may have no legal remedy against any of the named defendants. The documents presented by Giannini, which Unity did not attempt to contradict or controvert, show that Stape Builders was involuntarily dissolved and Des Plaines Bank's trusteeship rendered a nullity by virtue of the emptying of the land trust. It has been held that the consideration that any money award would be unefficacious because of insolvency is significant in exercising equitable jurisdiction. (*Johnson v. North American Life & Casualty Co.* (1968), 100 Ill. App. 2d 212, 218, 241 N.E.2d 332.) In our view, the fact that a monetary award would also be impracticable because of corporate dissolution and the emptying of a land trust is equally significant.[5] Any hardship caused to Unity,

---

[5]Unity does not dispute that Giannini's legal remedies were substantially impaired. Nevertheless, we recognize that prior to the emptying of the land trust, all beneficial interest in the trust was assigned from Stape Builders to Frank A. Stape. Since Giannini was apparently unaware of this assignment at the time he filed his first complaint, his pleadings do not seek any form of relief, legal or equitable, from Frank A. Stape. The record further discloses no reference to this individual other than as assignee of the beneficial interest. Giannini's proposed amended complaint, which the trial court refused to allow him to file, did name Frank A. Stape as a party-defendant and sought relief from him in the count which sought specific performance. Because this subsequent document was only a proposed pleading, however, we limit our analysis of the viability of Giannini's legal remedies to those which he sought in his original complaint and do not consider here whether he could obtain adequate money damages from Frank A. Stape. Further, as noted earlier, we do not consider whether Giannini would be entitled to money damages from Unity based upon breach of the purchase agreement.

when compared to the lack of viable legal remedies available to Giannini, was insufficient to totally defeat his claim.

Based upon our conclusions discussed above, we further determine that an order of specific performance would not, as a matter of law, embroil the trial court in such a burdensome and time-consuming task that these grounds would be sufficient totally to avoid or defeat Giannini's claim at this point in the proceedings. We observe that the trial court in the foreclosure action specifically retained jurisdiction over the cause to ensure that Unity honored its representations. As a result the award of specific performance here may amount to little more than an order that Unity abide by the trial court's ruling in the foreclosure action. Moreover the declaration of condominium ownership set forth the proper procedure for conversion consistent with the relevant provisions of the Condominium Property Act. (Ill. Rev. Stat. 1981, ch. 30, par. 325.) Thus, we cannot say at this juncture in the present action that to compel conversion of the appropriate building would be such a complicated task for the court to undertake, or that it would require the specialized skills needed where specific performance of construction contracts has been requested but denied (see *Bissett v. Gooch* (1980), 87 Ill. App. 3d 1132, 409 N.E.2d 515; *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773), such that Giannini's claim would be totally defeated or avoided on these grounds.

Unity also claimed before the trial court that the purchase agreement was invalid and unenforceable. In this appeal, Giannini renews the contentions he made below in response to Unity's arguments regarding the invalidity and unenforceability of the agreement. Unity now claims, however, that these issues are not properly before this court upon review.

It first contends that the transcript of the hearings before the trial court reveals that the court did not consider these questions. This argument is without merit, however. "Every issue raised by the motion to strike is \*\*\* before this court insofar as the same is argued." *Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 112, 45 N.E.2d 20.

Unity further claims that these questions are not properly before this court because Giannini's statement of issues presented for review in his appellate brief raised only the issue of "whether a contract to purchase a condominium can be specifically enforced." Unity contends that Giannini's failure to refer specifically to the questions of the enforceability and validity of the contract in his statement of the issues presented for review violated Illinois Supreme Court Rule 341(e)(3)

(87 Ill. 2d R. 341(e)(3)).

■ Supreme Court Rule 341(e)(3) provides that the "appellant's brief shall contain *** [a] statement of the issue or issues presented for review, without detail or citation of authorities." (87 Ill. 2d R. 341(e)(3).) Although we note that Giannini's format may not have demonstrated fastidious compliance with this rule, nevertheless our review of the record of the proceedings before the trial court wherein the questions were advanced and extensively argued, as well as Giannini's appellate brief, which devotes substantial analysis to the questions, lead us to conclude that we are able to consider them. See *Summitt Electric Co. v. Mayrent* (1977), 54 Ill. App. 3d 173, 178, 369 N.E.2d 319.

Because Unity argues that the questions of validity and enforceability of the contract are not proper questions for our resolution, it has chosen not to address these issues in the body of its appellate brief. Instead, it incorporates by reference the arguments made in its amended motion to dismiss count I filed with the trial court and included in the record on appeal. We therefore consider these contentions again here.

■ Unity first argued before the trial court that the agreement was invalid and unenforceable because it was signed by neither the trustee of the trust nor the beneficiary of the trust, but was instead executed by the agent of the beneficiary of the trust. Unity further claimed that an agent of a beneficiary of a trust cannot have the authority to bind the trustee ultimately to sell and convey the real estate subject to the agreement.

"It is well established that agency is a consensual, fiduciary relationship between two legal entities, created by law, by which the principal has the right to control the conduct of the agent, and the agent has the power to effect legal relations of the principal." (*Gunther v. Commonwealth Edison Co.* (1984), 126 Ill. App. 3d 595, 598, 467 N.E.2d 1104.) The existence of an agency relationship as well as the scope of the agent's authority may be implied from the facts and circumstances surrounding the particular case. *St. Ann's Home For the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 579, 420 N.E.2d 478.

Unity does not contend that Stape Builders was not agent for the beneficiary of the trust. Rather it claims that the scope of Stape Builders' authority did not include the power to direct the trustee to convey title to Giannini. This argument is not well taken. Stape Builders' authority as agent was to bind his principal, the beneficiary of the trust, to the terms of the purchase agreement. The agreement did not provide that a direction to cause this transfer was to be executed

by Stape Builders itself. Instead it provided that Stape Builders as agent of the beneficiary agreed that title would be caused to be conveyed to Giannini by a stamped Trustee's Deed: Consequently, there was nothing in the purchase agreement to indicate that Stape Builders was granted any authority beyond its capacity.

Unity also argued that the contract was invalid and unenforceable because it did not expressly provide that the beneficiary of the trust would execute a power of direction to Des Plaines Bank to convey title to Giannini. This contention is also flawed, as no such express language was required. A beneficiary of a conventional land trust may enter into a valid contract to convey title to trust property where the trust agreement vests in him the sole right to direct the trustee to convey title and where the purchase agreement discloses the trust and the beneficiary's status such that the beneficiary's exercise of this power of direction can be construed from the contract. (*First National Bank v. Oldenburg* (1981), 101 Ill. App. 3d 283, 287, 427 N.E.2d 1312.) The trust agreement at issue here conferred upon the beneficiary "a power of direction to deal with the title to said real estate \*\*\*." In addition, the purchase agreement referred to the trust arrangement and implicitly obligated the beneficiary to exercise its power of direction to convey by requiring that title pass to Giannini by a stamped trustee's deed. The purchase agreement was consequently valid and enforceable. See *Page v. Fosco* (1980), 90 Ill. App. 3d 1113, 1115-16, 414 N.E.2d 89; *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, 405-06, 371 N.E.2d 896.

For the reasons stated, we conclude that the trial court's dismissal of count I was erroneous.

■ Giannini argues that the trial court's denial of leave to file the proposed amended complaint violated article I, section 12, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 12) and section 2—616 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1981, ch. 110, par. 2—616) and its pertinent case law. Unity argues that the trial court properly denied Giannini's motion for leave to amend because the motion was erroneously denominated as one pursuant to section 2—616 of the Code, which permits an amendment to the pleadings prior to final judgment. (See Ill. Rev. Stat. 1981, ch. 110, par. 2—616(a).) Unity contends that the court's previous dismissal of count I of Giannini's complaint constituted a final judgment which precluded amendment pursuant to section 2—616. Instead, Unity claims the motion should have been made under section 2—1203 of the Code, which authorizes modification of a final order within 30 days after the entry of the judgment. (Ill. Rev. Stat. 1981, ch. 110,

par. 2—1203(a).) In view of our determination that the trial court erroneously dismissed count I of the original complaint, we do not address the merits of Unity's argument in this regard. Similarly, we need not consider whether the proposed amendment was properly denied on *res judicata* grounds. Instead, we address the question of whether the trial court's denial of leave to amend comported with section 2—616 of the Code and its applicable case law.

Section 2—616 provides that a trial court may allow amendments to the pleadings at any time prior to final judgment on just and reasonable terms as may appear proper to the court. (Ill. Rev. Stat. 1981, ch. 110, par. 2—616(a).) In considering whether to grant a motion to amend, a trial court should consider such factors as whether the proposed amendment would cure the defective pleading; whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; whether the proposed amendment is timely, and whether previous opportunities to amend can be identified. (*Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 377, 437 N.E.2d 774.) A trial court's power to allow amendment should be fully exercised in order that litigants may completely present their causes of action (*Scala/O'Brien Porsche Audi, Inc. v. Volkswagen of America, Inc.* (1980), 87 Ill. App. 3d 757, 762, 410 N.E.2d 205), and doubts should be decided in favor of allowance of the amendment. (*Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 492, 470 N.E.2d 1264.) The decision whether to permit an amendment to a complaint lies within the sound discretion of the trial court (*Richardson v. Economy Fire & Casualty Co.* (1984), 126 Ill. App. 3d 520, 523, 467 N.E.2d 317), and its decision will not be disturbed on review absent a showing of an abuse of that discretion. *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 858, 392 N.E.2d 591.

Based on the record before us, we conclude that the trial court's denial of the motion was an abuse of discretion. Although the motion was filed almost a year after count I had been dismissed, "[a] trial court should not deny leave to amend solely on the basis of delay in filing, without a showing of prejudice to the opposing party other than mere inconvenience ***. [Citations.]" (*Cvengros v. Liquid Carbonic Corp.* (1981), 99 Ill. App. 3d 376, 379, 425 N.E.2d 1050.) Although Unity argues prejudice in that amendment of the complaint would require it to take an active part in the litigation once more, we find this insufficient. Unity was, in any event, still involved in the matter because the trial court's dismissal order was not appealable and the court consequently retained jurisdiction over the entire cause. (87 Ill. 2d R. 304(a); see *Castro v. Chicago, Rock Island & Pacific*

*R.R. Co.* (1980), 83 Ill. 2d 358, 362-63, 415 N.E.2d 365, *cert. denied* (1981), 452 U.S. 941, 69 L. Ed. 2d 956, 101 S. Ct. 3086.) Moreover, in view of our reversal of the trial court's dismissal of count I of the complaint, Unity is once more actively engaged in the litigation.

Because we determined that the trial court's denial of leave to amend was an abuse of discretion, we do not consider the constitutional question raised by Giannini.

For the reasons set forth above, the order of the trial court which dismissed count I of Giannini's complaint is reversed; the order of the court which denied leave to amend is also reversed; and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.